IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SMART VENT, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>CRAWL SPACE DOOR SYSTEM INC.,<br>d/b/a CRAWL SPACE DOOR<br>SYSTEMS, INC.,<br><br>    Defendant. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action No.<br>13-5691 (JBS/KMW)<br><br>**OPINION** |

APPEARANCES:

Anthony J. DiMarino, III, Esq.
Emmett S. Collazo, Esq.
A.J. DIMARINO, III, PC
57 Euclid Street, Suite A
Woodbury, NJ 08096
    Counsel for Plaintiff

Michael N. Onufrak, Esq.
Siobhan Katherine Cole, Esq.
WHITE & WILLIAMS, LLP
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, PA 19103-7395
    Counsel for Defendant

**SIMANDLE, Judge:**

**I.    INTRODUCTION**

In this patent infringement and unfair competition action, Plaintiff Smart Vent, Inc. (hereinafter, "Plaintiff" or "Smart Vent") moves for partial summary judgment and for a permanent injunction against Defendant Crawl Space Door System Inc. (hereinafter, "Defendant" or "CSD"), because Crawl Space

"falsely" advertises its flood vents as conforming to TB-1 and the NFIP Insurance Manual. Thus, the primary issue addressed is whether CSD falsely advertised its flood vents as TB-1 compliant. For the reasons that follow, Plaintiff's motion for partial summary judgment and for a permanent injunction will be granted.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The Court thoroughly described the relevant background of this case in Smart Vent Products, Inc. v. Crawl Space Door System, Inc., No. 13-5691, 2016 WL 4408818 2-*4 (D.N.J. Aug. 16, 2016), and need not repeat it here. As relevant here, the Court previously (1) granted Defendant's motion for judgment on the pleadings to the extent it concerned Plaintiff's allegations of FEMA and NFIP Compliance and patent protection, and (2) denied it to the extent it concerned Plaintiff's allegations of TB-1 Compliance and the trademark related issues. Id. Now, Smart Vent moves for partial summary judgment and for a permanent injunction against Defendant Crawl Space Door System Inc., (hereinafter, "Defendant" or "CSD") because Crawl Space "falsely" advertises its vents as conforming to TB-1 and the NFIP Insurance Manual. As discussed herein, pursuant to the Court's previous decisions,[1] the Court will only consider

---

[1] Smart Vent Products, Inc. v. Crawl Space Door System, Inc., No. 13-5691, 2016 WL 4408818 2-*4 (D.N.J. Aug. 16, 2016); Smart

2

Plaintiff's claims with regard to whether or not CSD falsely advertises its flood vents as "TB-1 compliant."

## III. STANDARD OF REVIEW

### A. Summary Judgment Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Alabama v. North Carolina, 560 U.S. 330, 344 (2010) (citations and internal quotation marks omitted); see also FED. R. CIV. P. 56(a). Stated differently, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," the Court may grant summary judgment. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

In evaluating a motion for summary judgment, the Court must view the material facts in the light most favorable to the non-moving party, and must make every reasonable inference in that party's favor. See Scott v. Harris, 550 U.S. 372, 378 (2007); Halsey v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014). An inference based upon "'speculation or conjecture,'" however, "'does not create a material factual dispute sufficient to defeat summary judgment.'" Halsey, 750 F.3d at 287 (citations

---

Vent Prods. v. Crawl Space Door Sys., Civil Action No. 13-5691 (JBS/KMW), 2017 U.S. Dist. LEXIS 44206, at *1 (D.N.J. Mar. 27, 2017).

3

omitted). Rather, the non-moving party must support each essential element with concrete record evidence. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

   B. **Permanent Injunctive Relief Standard**

   A permanent injunction is proper, where the prevailing plaintiff demonstrates:

> (1) that it has suffered an irreparable injury; (2) that the remedies available at law, such as monetary damages, prove inadequate to compensate for that injury; (3) that the balance of hardships between the plaintiff and defendant favor equitable relief; and (4) that the public interest would not be disserved by a permanent injunction.

Chanel, Inc. v. Matos, 133 F. Supp. 3d 678, 689 (D.N.J. 2015) (permanently enjoining Lanham Act violations)

**IV. DISCUSSION**

   A. **Smart Vent's Unfair Competition Claim**

   Smart Vent argues that the undisputed facts establish that CSD falsely markets its louvered flood vents as conforming to TB-1 and the NFIP Insurance Manual, and as "Engineered" Flood Vents that allow reductions in Flood Insurance Premiums. [Pl. Br. at at 4-19.] Put differently, Plaintiff argues that "since [Defendant's] louvered flood vents fail to conform to the requirements and guidelines set forth in TB-1 and the NFIP Insurance Manual's Lowest Floor Guide, [Defendant's] marketing statements that its louvered flood vents will allow consumers to

lower their flood insurance premiums are literally false as a matter of law." (Id. at 16.) In response to Plaintiff's assertions, CSD generally argues that the Court already rejected Plaintiff's central argument when the Court found that "Crawl Space's approach to certification . . . comports with the facial requirements for certification under 44 C.F.R. § 60.3(c)(5), i.e., the actual binding regulations underpinning the FEMA-administered NFIP" [Def. Br. at 3.] (citing Smart Vent Prods. v. Crawl Space Door Sys., Civil Action No. 13-5691 (JBS/KMW), 2016 U.S. Dist. LEXIS 108052, at *16-19 (D.N.J. Aug. 15, 2016)). To the extent that Plaintiff's assertions rest upon the false premise that CSD cannot market its flood vents as "FEMA Compliant" because it uses individual engineering certifications rather than the ICC-ES Evaluation Report referenced in TB-1, the Court rejects this argument without any further discussion.[2] However, the Court will assess Smart Vent's specific allegation that CSD falsely markets its flood vents as TB-1 compliant in violation of Section 43(a) of the Lanham Act. [Pl. Br. at 15-19.]

---

[2] See Smart Vent Prods. v. Crawl Space Door Sys., Civil Action No. 13-5691 (JBS/KMW), 2016 U.S. Dist. LEXIS 108052, at *16-19 (D.N.J. Aug. 15, 2016).

5

Section 43(a) of the Lanham Act[3] governs claims of unfair competition, and permits a civil action against:

> [a]ny person ... [who] uses ... any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ... misrepresents the nature, characteristics, qualities, or geographic origin of ... [the] goods, services, or commercial activities...

15 U.S.C. § 1125(a)(1)(B). In other words, section 43(a) provides "broad protection against various forms of unfair competition and false advertising," by specifically prohibiting false or misleading factual statements concerning commercial products. Presley's Estate v. Russen, 513 F. Supp. 1339, 1376

---

[3] The New Jersey unfair competition law states that "[n]o merchant, firm or corporation shall appropriate for his or their own use a name, brand, trade-mark, reputation or goodwill of any maker in whose product such merchant, firm or corporation deals." N.J.S.A. § 56:4-1. Smart Vent asserts that New Jersey's statutory and common law unfair law proscribe a broader spectrum of misconduct than that prohibited under the Lanham Act, but for the purposes of its instant motion it asks the Court to extend a Lanham Act analysis to its state-law unfair competition claims. (Def. Br. at 7 n.4.) However, the Appellate Division recently observed, "[t]here is no New Jersey precedent which supports [plaintiff's] assertion that the common law tort of unfair competition encompasses . . . false advertising." Tris Pharma, Inc. v. UCB Manufacturing, Inc., 2016 WL 4506129, at *5 (N.J. Super. App. Div. Aug. 29, 2016); but see Wellness Pub. v. Barefoot, 2008 WL 108889, at *20 (D.N.J. Jan. 9, 2008)("Nevertheless, the common law of unfair competition is not completely boundless . . . and most cases of unfair competition encompass one of two torts: passing off one's goods or services as those of another and unprivileged imitation."); Nat'l Auto Div., LLC v. Collector's Alliance, Inc., 2017 WL 410241, at *4 (N.J. Super. App. Div. Jan. 31, 2017)(recognizing a third tort covered by the common law of unfair competition: tortious interference). Thus, the Court will only consider Plaintiff's false advertising claims under the Lanham Act.

(D.N.J. 1981) (citations omitted). A claim of false or misleading representations, in turn, requires a showing:

    a. that the defendant made a false or misleading statement concerning its product;

    b. that the statement caused actual deception or at least created a tendency to deceive a substantial portion of the intended audience;

    c. that the deception likely influenced purchasing decisions by consumers;

    d. that the advertised goods traveled in interstate commerce; and

    e. that the statement created a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.

See Warner-Lambert Co. v. Breathasure, Inc., 204 F.3d 87, 91-92 (3d Cir. 2000).

**1. TB-1 Compliance**

As explained in the related Smart Vent v. U.S. Floodair Vents matter (and as illustrated in Exhibit A to Smart Vent's Complaint in this litigation),

> In its capacity as administrator of the NFIP, in August 2008, FEMA published a Technical Bulletin, "Openings in Foundation Walls and Walls of Enclosures Below Elevated Buildings in Special Flood Hazard Areas in accordance with the" NFIP" (hereinafter, "TB-1"), in an effort to "explain[] the NFIP requirements for flood openings and [to] provide[] guidance for [flood] openings."

Smart Vent, Inc. v. USA Floodair Vents, Ltd., 193 F. Supp. 3d 395, 402-403 (D.N.J. 2016)(internal citations and footnotes omitted). More specifically, TB-1 explains the certification

7

process for the "two types of flood vents" recognized by the NFIP "for relieving hydrostatic pressure on enclosed spaces: 'non-engineered openings' and 'engineered openings.'"[4] [Docket Item 1 at ¶ 14.)  As relevant here, TB-1 specifies that "engineered openings," may be certified through an "individual certification" or an "Evaluation Report issued by the Internal Code Council Evaluation Services, Inc.," or ICC-ES. (Id. at ¶¶ 18-19, 21.)

> With respect to the individual certification process, TB-1 explains that 'building designers or owners may ... use unique or individually designed openings or devices.' In such a scenario, a licensed design professional must (1) 'identify the building in which the engineered openings will be installed,' (2) certify that the flood openings 'automatically equalize hydrostatic flood loads,' (3) provide a description of the 'range of flood characteristics' supported by the certification, and (4) note 'the installation requirements or limitations that, if not followed, will void the certification.'

Smart Vent, Inc. v. USA Floodair Vents, Ltd., 193 F. Supp. 3d 395, 403-404 (D.N.J. 2016)(internal citations and footnotes omitted).  The ICC-ES Evaluation Report, by contrast, entails a

---

[4] An "engineered" flood opening, as here, activates, or opens and shuts, against rising pressure in order to equalize hydrostatic loads.  [Docket Item 1 at ¶ 16.]  A "non-engineered" flood opening, by contrast, has no automated mechanism, and must only satisfy the prescriptive requirement that calls for one square inch of net open area for each square foot of enclosed area.  (Id. at ¶ 15.)  In other words, these "non-engineered" flood openings can be as simple as "leaving openings in brickwork" or "omitting blocks from foundational walls."  (Id.)

8

more rigorous "'technical evaluation[] of documentation submitted by a [flood vent] manufacturer, including technical design reports, certifications and testing that demonstrate ... compliance and performance.'" [Docket Item 1 at ¶ 20 (citation omitted).] This Court has interpreted TB-1's "individual certification" as pertaining "only to specialized or uniquely-constructed flood vents." Smart Vent, Inc. v. USA Floodair Vents, Ltd., 193 F. Supp. 3d 395, 403 n.13 (D.N.J. 2016). Accordingly, TB-1 requires that all mass-produced flood vents be certified via the more rigorous ICC-ES Evaluation Report in order to be TB-1 compliant.

### 2. Defendant's Individual Certification

In its previous opinion, the Court discussed the certification process that CSD utilizes for its mass-produced flood vents. See Smart Vent Prods. v. Crawl Space Door Sys., Civil Action No. 13-5691 (JBS/KMW), 2016 U.S. Dist. LEXIS 108052, at *9 (D.N.J. Aug. 15, 2016). As relevant here, CSD relies on "individual certifications" for its mass-produced flood vents, rather than an ICC-ES Evaluation Report. Id. With this in mind, the Court will now assess Defendant's advertisement of its flood vents against the regulatory backdrop of TB-1 to determine whether CSD falsely advertises its flood vents as TB-1 compliant.

### 3. Defendant made false statements about its flood vents that traveled in interstate commerce.

In the related Smart Vent action, this Court was presented with the same issue of whether a defendant company, USA Floodair Vents (hereinafter, "Floodair"), violated unfair competition laws by falsely marketing its flood vents as TB-1 compliant despite Floodair's failure to adhere to TB-1's individual certification requirement. Smart Vent, Inc. v. USA Floodair Vents, Ltd., 193 F. Supp. 3d 395, 422 (D.N.J. 2016). In that case, Smart Vent produced evidence of advertisements wherein Flood Air represented that its products as being certified "in accordance with NFIP, FEMA TB-1-08 and ASCE/SEI 24-05." Id. at 423. The Court concluded that "as a matter of law, . . . Floodair made at best a misleading and at worst a false statement that the USA Floodair vents comply with TB-1." Id. at 424. However, summary judgment was still denied because Smart Vent failed to produce any evidence "on the issues of likely deception, the factors influencing consumer purchasing decisions, nor any quantification or presentation on the injury to Smart Vent from these false statements." Id. Specific to the issue of injury caused by Floodair's false advertising, the Court rejected Smart Vent's assertion that Floodair's misrepresentations had diverted sales from Smart Vent to Floodair because Smart Vent failed to present any "empirical

10

evidence (in the form of sales data or otherwise) to substantiate that notion." Id. at 425. Though this Court acknowledged that it was "a reasonable inference that USA Floodair's misrepresentation that its product complies with TB-1 led to increasing its sales and decreasing Smart Vent's sales," that inference was unavailable to Smart Vent as the movant in its summary judgment motion. Id.

In the present case, Smart Vent directs the Court's attention to, *inter alia*, multiple pre-signed documents that are publicly displayed on CSD's website which state that "[t]his certification follows the design requirements and specifications established in FEMA Technical Bulletin 1-08". [Docket Item 103-9.] Additionally, the heading of the pre-signed documents includes precisely the same language that the Court found to be "at best a misleading and at worst a false statement that the USA Floodair vents complied with TB-1" -- certified "in accordance with NFIP, FEMA TB-1-08 and ASCE/SEI 24-05." Id.; see USA Floodair Vents, Ltd., 193 F. Supp. 3d at 424. Defendant, however, argues that "[a]lthough Crawl Space always operated with the good faith belief that both its vents and its certifications complied with TB-1's guidance, Crawl Space never marketed its vents as specifically 'TB-1 Compliant.'" [Def. Br. at 7.] CSD further argues that they "[continue] in [its] belief

11

that [its] vents meet the specifications set forth in TB-1 as they pertain to the design and functionality of its vents and that belief is well supported by the testimony of the individual certifying engineers and Crawl Space's engineering expert." [Def. Br. at 11.] In other words, CSD does not dispute the fact that its mass-produced flood vents are not certified via an ICC-ES Evaluation Report, which is required in order for them to advertise their floods vents as TB-1 compliant. Rather, they argue that it "never marketed its vents as specifically 'TB-1 Compliant.'" However, the Court rejects this argument. [Def. Br. at 7.]

As previously mentioned, CSD publicly displays on its website multiple pre-signed documents that have, at the very top of each document, a heading that reads "Certification of Engineered Flood Openings: In Accordance with NFIP, FEMA TB-1-08 and ASCE/SEI 24-05." [Docket Item 103-9.] Essentially, CSD requests that the Court interpret this statement as evidence of its good faith belief that its vents meet the specifications set forth in TB-1 "as they pertain to the design and functionality of its vents." [Def. Br. at 8.] However, the Court finds that a plain reading of this statement clearly suggests otherwise. Particularly, the Court finds that any reasonable fact finder could only interpret this statement as indicating that CDS's

vents are, in fact, TB-1 compliant, that is, that the flood vents adhere to TB-1's individual certification requirement. Yet, the reality is that Defendant's flood vents are not TB-1 compliant because, as previously discussed, they are not certified via an ICC-ES Evaluation Report. For this reason, the Court finds that the undisputed evidence satisfies the first element. Moreover, the parties agree that the CSD vents traveled in interstate commerce, establishing the fourth element for an unfair competition claim. [Docket Item 1 at ¶ 86; Docket Item 2 at ¶ 86.] The Court will now turn to the parties' arguments with regard to the remaining elements.

### 4. Defendant's false statements were "literally false."

A plaintiff can prevail in a false advertising action if it proves that the advertisement is (1) literally false or (2) literally true or ambiguous, but has the tendency to deceive consumers. Castrol Inc. v. Pennzoil Co., 987 F.2d 939, 943 (3d Cir. 1993) ("a plaintiff must prove either literal falsity or consumer confusion, but not both"). "[A]lthough the plaintiff normally has the burden to demonstrate that the defendant's advertising claim is false, a court may find that a completely unsubstantiated advertising claim by the defendant is *per se* false without additional evidence from the plaintiff to that effect." Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co., 290 F.3d 578, 590 (3d Cir. 2002).

In the present case, the Court finds that Defendant's statement, "Certification of Engineered Flood Openings: In Accordance with NFIP, FEMA TB-1-08 and ASCE/SEI 24-05," which is placed as the header on over a dozen pre-signed documents that are publicly available on Defendant's website, are unsubstantiated and *per se* false as to TB-1 compliance. [Docket Item 103-9.] Defendant has failed to produce any evidence that its flood vents are TB-1 compliant. Rather, Defendant requests that the Court focus on Smart Vent's arguments regarding Defendant's customers' eligibility for lower insurance premiums, under NFIP, despite the fact that Defendant's flood vents are not TB-1 compliant. [Def. Br. at 8-10.] Though Defendant's customers may still remain eligible for such flood insurance premium discounts, this does not excuse the fact that CSD advertises that its flood vents possess a particular certification of being compliant with TB-1 that it simply does not possess. Thus, the Court finds that the particular statement in question is "literally false," because the mass-produced louvered flood vents are not TB-1 compliant.

### 5. Presumption of Deception, Materiality and Harm

Many courts, including the Third Circuit, impose a rebuttable presumption of customer deception when there is a finding of literal false advertising. See, e.g., Castrol, 987 F.2d at 943 (confirming that in the Third Circuit, where the

14

advertisement is shown to be literally false, the court may enjoin it without reference to its impact on the consumer); Cashmere & Camel Hair Manuf. Institute v. Saks Fifth Ave., 284 F.3d 302, 314-16 (1st Cir. 2002) ("it has become the practice of most circuits to apply the [customer deception] presumption to all literal falsity claims"); PPX Enterprises v. Audio Fidelity Enterprises, 818 F.2d 266, 272-73 (2d Cir. 1987),; EFCO Corp. v. Symons Corp., 219 F.3d 734, 740 (8th Cir. 2000); Solvay Pharms. Inc. v. Global Pharms. Inc., 419 F. Supp. 2d 1133, 1144-45 (D. Minn. 2006); Iams Co. v. Nutro Prods. Inc., No. 00-566, 2004 U.S. Dist. LEXIS 15134, at * 13-14 (S.D. Ohio July 3, 2004).

In addition to a presumption of customer deception, once it is determined that a company advertised false statements regarding their product, those false statements are presumed to be material. Bracco Diagnostics, Inc. v. Amersham Health, Inc., 627 F. Supp. 2d 384, 478 (D.N.J. 2009).[5] Moreover, after a finding of literal falsity, where a plaintiff merely seeks injunctive relief, a Court need not inquire into the impact on

---

[5] "Nevertheless, the type of evidence needed to prove materiality ... varies depending on what type of recovery the plaintiff seeks." " Id. Quoting Balance Dynamics Corp. v. Schmitt Ind., 204 F.3d 683, 690 (6th Cir. 2000) Plaintiffs seeking injunctive relief must only "prove that defendant's representations 'have a tendency to deceive customers.'" Id.; compare PPX Enters., Inc. v. Audiofidelity Enters., Inc., 818 F.2d 266, 271 (2d Cir. 1987)("Plaintiffs looking to recover monetary damages for false or misleading advertising that is not literally false must prove actual deception.").

15

the customer as it relates to the evidence of harm or specific damages. Id. at 482 (acknowledging that a finding of literally false advertising affords plaintiffs with a presumption of harm or injury when plaintiff only seeks injunctive relief); see also Castrol, Inc. v. Pennzoil Co., 987 F.2d 939, 943 (3d Cir.1992) (affirming trial court decision granting injunctive relief but denying monetary damages despite finding of literal falsity); Harper House, Inc. v. Thomas Nelson, Inc., 889 F.2d 197, 210 (9th Cir. 1989)("[B]ecause of the possibility that a competitor may suffer future injury, as well as the additional rationale underlying section 43(a) - consumer protection - a competitor need not prove injury when suing to enjoin conduct that violates section 43(a).")

In this case, the Court has found that CSD disseminated literally false statements, and CSD has failed to provide any evidence to rebut a finding of deception or materiality. Therefore, the Court finds that CSD's statements regarding the TB-1 compliance of their flood vents were material in that they were likely to influence purchasing decisions. Moreover, because Plaintiff only seeks injunctive relief, this Court need not concern itself with issues of specific causation of harm to Plaintiff.

**C. Injunctive Relief**

"When a merchandising statement or representation is literally or explicitly false, the court may grant relief without reference to the advertisement's impact on the buying public." Coca-Cola Co. v. Tropicana Products, Inc., 690 F.2d 312, 317 (2d Cir. 1982). The Third Circuit has further provided that:

> there seems to be no requirement that purchasers actually be deceived, but only that the false advertisements have a tendency to deceive. This seems to be the result desired by Congress in that Section 43(a) confers a right of action upon any person who "believes that he is or is likely to be damaged" by defendant's practices. While it would be going too far to read the requirement of customer reliance out of this section so far as damages are concerned, we believe that this is a recognition that, as with most equitable relief by way of injunction, Section 43(a) may be asserted upon a showing of likelihood of damage without awaiting the actuality.

See Stiffel Co. v. Westwood Lighting Grp., 658 F. Supp. 1103, 1115 (D.N.J. 1987)(quoting Parkway Baking Co. v. Freihofer Baking Co., 255 F.2d 641, 649 (3d Cir. 1958)).

Having found that CSD's literally false statements regarding the TB-1 Compliance of their flood vents afford Smart Vent with a rebuttable presumption of deception, materiality and harm, as to which CSD raises no genuine factual dispute, the Court, accordingly, finds that Plaintiff has satisfied the element of irreparable harm. See Gucci America, Inc. v. Daffy's

Inc., 354 F.3d 228, 236-37 (3d Cir. 2003)("trademark infringement amounts to irreparable injury as a matter of law"). With respect to the second element, the Court not only finds that monetary damages are both inadequate and difficult to ascertain, but the Court also finds that a remedy at law will not necessarily prevent CSD from continuing to deceptively market their flood vents as TB-1 compliant. See Coach, Inc. v. Bags & Accessories, Civil Action No. 10-2555 (JBS-JS), 2011 U.S. Dist. LEXIS 52767, at *25 (D.N.J. May 17, 2011)(citing Audi AG v. D'Amato, 469 F.3d 534, 550 (6th Cir. 2006)(stating when there is potential for future harm there is no adequate remedy at law)). With regard to the third element, the only hardship imposed upon the Defendants is that they obey the law.[6] However, if the injunction is not granted, Smart Vent suffers the hardship of future loss of sales from customers who specifically desire TB-1 compliant flood vents.[7] Additionally, issuance of an injunction furthers the public's interests by protecting consumers from the deception and confusion caused by CSD's false

---

[6] Additionally, any harm suffered by CSD as a result of the injunction would be self-inflicted, a factor which weighs in favor of granting the requested relief. See Chanel, supra, 133 F. Supp. 3d at 689-90 (citing Novartis Consumer Health, 290 F.3d at 596 ("[T]he injury a defendant might suffer if an injunction were imposed may be discounted by the fact that the defendant brought the injury upon itself."))
[7] See Microsoft Corp. v. McGee, 490 F. Supp. 2d 874, 882-83 (S.D. Ohio 2007).

18

advertising of its flood vents. See Chanel, supra, 133 F. Supp. 3d at 690 (noting the "avoidance of consumer confusion" is in the public interest). The Court finds that the public interest is enhanced by preventing continuing non-compliance with regulatory criteria.

For the aforementioned reasons, the Court finds that a permanent injunction is warranted. Thus, Defendants are enjoined from publicly displaying or otherwise advertising that its mass-produced louvered flood vents are certified in accordance with NFIP TB-1.

**V. CONCLUSION**

For all of these reasons, the Court will grant Smart Vent's motion for partial summary judgment with respect to its unfair competition claims regarding CSD advertising its mass-produced louvered flood vents as TB-1 compliant and issue a permanent injunction against doing so.  An accompanying Order will be entered.


**October 31, 2017**             **s/ Jerome B. Simandle**
Date                                   JEROME B. SIMANDLE
                                               U.S. District Judge