# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SMART VENT PRODUCTS, INC., | CIVIL ACTION |
| Plaintiff, | 1:13-CV-05691-JHR-KMW |
| v. | |
| CRAWL SPACE DOOR SYSTEM INC., d/b/a CRAWL SPACE DOOR SYSTEMS, INC. | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR EXTRAORDINARY AND EMERGENCY RELIEF COMPELLING THE PRODUCTION OF DOCUMENTS

Defendant, Crawl Space Door Systems, Inc. ("CSD"), by and through its undersigned counsel, moves to compel the production of all documents and videos relating to testing of CSD's flood vents conducted by or on behalf of Plaintiff, Smart Vent Products Inc. ("Smart Vent"). CSD respectfully requests an Order requiring the production of all documents relating to such testing on or before 5:00 p.m. on Saturday, October 19, 2019.

### I. PRELIMINARY STATEMENT

Smart Vent made a limited production of videos and pictures relating to the testing of CSD's vents last night, on October 17, 2019, after CSD rested its case.

23606726v.1

The production consisted of three (3) videos and 18 pictures[1]. If CSD had this information during the trial, it could have impeached the testimony of Michael Graham and Thomas Little about this testing, as the newly produced documents confirm that both Mr. Graham and Mr. Little have given false testimony to the jury in this case. Moreover, CSD requested both orally and in writing for Smart Vent to produce all documents relating to this testing and Smart Vent had steadfastly refused to produce these documents and videos, despite the fact that CSD specifically requested this information during the discovery phase of this case. This yet-to-be-produced information could provide additional information to challenge the testimony of Smart Vent's witnesses. These additional documents and videos need to be produced.

## II.  FACTS

### A. CSD Asked for the Newly Discovered Evidence in Discovery and it was Never Produced.

#### 1. Document Requests.

CSD requested the newly discovered evidence as part of its document requests in this case. For instance, Document Request No. 19 requested the following:

---

[1] A copy of this production is being hand delivered to the Court.

> **Request No. 19.**   All documents supporting Smart Vent's contention that Crawl Space overstates the amount of enclosed space that Crawl Space's vents service.[2]
>
> Smart Vent responded that it "will supplement this Response in accordance

with the discovery schedule and the Local Rules." *See id*. Despite Mr. Graham having testified at trial that he was aware of testing and videos supporting Smart Vent's positon that CSD overstates the coverage area of its vents, the documents produced last night, on October 17, 2019, were not produced in discovery. *See* Trial Tr., Day 1, p. 154.

Likewise, CSD's Document Request No. 23 requested the following documents:

> "**Request No. 23.**   All documents exchanged between Smart Vent and any third party concerning Crawl Space's flood vent products." Ex. A.

Smart Vent responded by stating that "discovery is on-going, and Smart Vent reserved the right to supplement this Response." *Id.* However, Mr. Little confirmed at trial – for the first time – that the videos were sent to a consultant by the name of Thomas Merrill. *See* Trial Transcript, Day 3 at 418-19. Mr. Little further confirmed that two videos were sent to Mr. Merrill and that Mr. Merrill emailed Mr. Graham asking whether there were additional test videos. *See* March 3, 2014 email attached

---

[2] *See* Plaintiff's Response and Objection to Defendant's First Set of Document Requests, Exhibit "A" hereto.  The definition of "document" contained in Defendant's First Set of Document Requests specifically included videos.

-3-

23606726v.1

as Exhibit "B" hereto.  Mr. Merrill's email suggests that he was retained to conduct additional testing of CSD's vents.  *See id.*  Mr. Merrill also references having spoken to a James Clement at Cd-Adapco regarding modeling results that may also pertain to testing of CSD's vents. *See id.*  Other than this one email, Smart Vent did not produce any documents that were exchanged between Smart Vent and these individuals regarding the tests it performed on CSD's vents.  Smart Vent now refuses to produce these documents.

### 2. Initial and Supplemental Disclosures.

Smart Vent filed its Rule 26(a)(1) Initial Disclosures in this case on February 14, 2014.  *See* Initial Disclosures, Exhibit "C" hereto.  Smart Vent identified only Mike Graham and Tom Little as individuals likely to possess discoverable information. *See id.*, p. 1.  Smart Vent did not disclose Mr. Merrill or James Clement from Cd-Adapco. *See id.*  Smart Vent also did not disclose the existence of any documents relating to performance testing.  *See id.* at p. 2.

On January 30, 2015, Smart Vent filed Supplemental Initial Disclosures pursuant to Rule 26(a)(1).  *See* Supplemental Initial Disclosures, Exhibit "D" hereto. Smart Vent again represented that Mike Graham and Tom Little were its only representatives, employees, or agents likely to have discoverable information in this case.  *See id.,* page 2.  Smart Vent again failed to disclose the existence of any documents relating to performance testing.  *See id.* at 3-4.

-4-

### 3. Mr. Graham's Deposition Testimony.

Mr. Graham was deposed in this case on January 29, 2016. During his deposition, he was asked to relate everything he knew about how Smart Vent had determined that CSD overstates the net opened area of its vents. *See* Graham deposition, pp. 15:15-18:8, Exhibit "E" hereto. Mr. Graham did not disclose performance testing as part of his response. *See id.* Additionally, Mr. Graham was asked to identify any engineers who had looked at CSD's vents on behalf of Smart Vent. Mr. Graham testified that the only engineer that ever looked at CSD's vents was Bill Coulbourne, and the only thing he did was confirm measurements Smart Vent had done of CSD's vents in or around 2005. *See id.* at pp.28:13-30:10. Mr. Graham did not disclose that Mr. Merrill and James at Cd-Adaptco were involved in testing CSD's flood vents. Nor did Mr. Graham disclose that Bill Coulbourne was involved in performance testing of CSD's vents, yet the videos and documents CSD received last night appear to show that Bill Coulbourne was involved in the testing of CSD's vents.

### 4. Joint Pre-Trial Memorandum.

Smart Vent identified 673 exhibits as part of the Joint Pre-Trial Memorandum that was filed in this case. *See* Joint Pre-Trial Memo, Exhibit "F" hereto. None of the documents that were produced last evening were identified among those 673 exhibits. *See id.*

23606726v.1

### B. Smart Vent's Witnesses Testified about Testing that Smart Vent Conducted of CSD's Vents and CSD Did Not Have the Documents Necessary to Cross-Examine these Witnesses.

Mr. Graham testified on **direct** examination that:

> we put it in a test tank and we tested in, and it functioned the same as what we thought expected an air vent to function as. It would clog up. And then we went and asked people. We asked consultants ….

Trial Testimony of Michael Graham, Day 1, p. 83.

On Cross-examination, Mr. Graham testified that:

> So, we put it in our test tank, we videoed it, and we took pictures of it, and we could e-mail you pictures of the video we ran, and after the test, of all the debris that stuck in it, we could do that for you.

*Id.* at p. 93.

Similarly, Mr. Little testified on **direct** examination about a document titled: "Don't Be Mislead" (sic). Exhibit "G" hereto (Plaintiff's Exhibit 681). Smart Vent did not produce this document in discovery. Trial Transcript, Day 3, p. 395 (Mr. DiMarino telling the jury that "[t]his is a document I received from Crawl Space Doors."). Mr. Little proceeded to testify that:

> 19 Q. Mr. Little, can you tell us about this page?
>
> 20 A. Sure. These are pictures of the testing.
>
> 21 Q. What testing?
>
> 22 A. We tested the Crawl Space Door against AC-364 and it
>
> 23 failed. So these are pictures of the actual testing.

24 Q. Okay. Well, tell the jury what the pictures show.

25 A. So, in the top left-hand picture, what we're doing is

1 we're showing the differential and head pressure. So we

2 talked about the pass/fail being any time during the ICC

3 Evaluation Service test, that's AC-364. Any time the head

4 pressure, the flood water height, is greater than one foot on

5 either side of the test apparatus, the test chamber, that's a

6 failure because one foot of flood water pressure exerts a lot

7 of force and it can cause damage. So that's why it's a

8 pass/fail. All right? Just like when we put vents in a

9 foundation, you've got to have them within 12 inches of the

10 highest adjacent grade.

11 So what we're showing here is the differential in

12 height. And I think the other picture, you can see it a

13 little bit better, on the bottom one. Yeah, you can really

14 see -- in this image, it's starting to almost crest on the one

15 side, and you can see the height on the other.

16 Q. Okay.

17     MR. DIMARINO: Can we go to the next page, please.

18 BY MR. DIMARINO:

23606726v.1

>19 Q. What are these pictures of?
>
>20 A. This is the images of the Crawl Space Door vent failing
>
>21 the -- we pulled the vent out and you can -- well, you can
>
>22 see, it's still in the test tank, you can see the debris
>
>23 cloggage and then once we took the vent out, we took picture
>
>24 of how the vent looked with the debris. But that's why it --
>
>25 that's one of the reasons it failed.

*Id.* at 404-405.

On cross-examination of Mr. Little, he testified that Mr. Coulbourne was not present during the testing and that no video was taken of the testing. *See id.* at 411-12 (Little testifying "I don't have a video") and (testifying that Bill Coulbourne was never involved in any type of performance testing"). Mr. Little also testified that he "bumped up the flow" rate during the test, but had no video to show how much the flow rate was bumped up. *See id.* at 411. This is critical because TB-1 and AC 364 on which Smart Vent relies both specify flow rates of 5ft/hr. CSD did not have any documents or videos to challenge Mr. Little on the actual flow rate he used for this "failed test" that he testified about. In fact, he testified there were no videos. Had such documents been produced, as they should have been, CSD could have shown that the test was not performed under proper testing conditions, and thus, Mr. Little's testimony could have been stricken as irrelevant.

### C.     New Evidence Produced by Smart Vent After CSD Rested.

The documents produced last night by Smart Vent relate to the testing Mr. Little referenced during his direct and cross-examination. This is evident because Mr. Little testified that he took the pictures of the rest results found in the document "Don't be Mislead" (sic). *See id.* at 409 (testifying "I know I was there, because I took the pictures"). The three pictures on the right depicted below are taken from "Don't be Mislead" (sic) and the picture on the left is a screen shot of one of the three (3) videos that was produced last evening. The pictures and the video were clearly taken at the same time, in fact, the shadow that appears in both the video screen shot and the pictures from the "Don't be Mislead" (sic) document, show that they had to be taken simultaneously.



This evidence was not available to CSD when it was cross-examining Mr. Little. Had it been made available, as it should have been absent Smart Vent's violation of

its discovery obligations, CSD could have attacked Mr. Little's credibility by showing there was video of the testing.

Moreover, there is a reference to a "Bill" heard on this video which CSD believes is Bill Coulbourne. Mr. Little testified that Mr. Coulbourne was not present during this testing. Mr. Graham also testified at his deposition that Mr. Coulbourne was not involved in any testing. Both statements were false, but without the video, CSD could not impeach the witnesses.

Further, Mr. Little testified about flow rate. In fact, the "Don't be Mislead" (sic) documents states that CSD's vent failed under AC-364. The video CSD received last night shows a flow rate between 2-3 feet per minute or 120-180 feet per hour. The standard under AC-364 is a minimum of 5 feet per hour. If CSD had this video, it could have completely invalidated Mr. Little's testimony.

Finally, the production last evening also contained two videos showing CSD's vents passed tests when conducted properly. One test is a debris test performed using the proper flow rate. The other is a video without debris. If CSD had these videos, it could have impeached both Mr. Graham and Mr. Little who testified that the testing showed that CSD's vents failed. Thus, the failure to produce these documents prevented CSD from properly challenging critical testimony. These videos also show that Smart Vent pursued this litigation in bad faith, because Smart Vent has always possessed knowledge that CSD's flood vents pass performance tests

-10-

23606726v.1

when performed in accordance with the criteria of TB-1, ASCE 24-05, and even the rise test set forth in ICC-ES AC364.

### III. THE INSTANT MOTION

As demonstrated above, CSD requested the recently produced documents in discovery and Smart Vent affirmatively misrepresented that it did not test CSD's flood vents. The newly discovered evidence would have enabled CSD to impeach critical testimony offered by Mr. Graham and Mr. Little. Smart Vent now refuses to produce the other documents and videos relating to this testing, despite CSD having specifically requested these documents in discovery. CSD also asked Mr. Graham about this very issue and he lied about testing generally and Mr. Coulbourne and Mr. Merrill's involvement in testing. CSD needs all of the documents relating to this testing so that it can properly assess whether it should request an opportunity to reopen its case for the limited purpose of addressing this issue properly with Mr. Graham and Mr. Little. CSD requests this expedited relief in the interests of justice. *See pex Hosiery Co. v. Leader*, 102 F.2d 702, 702 (3rd Cir. 1939) (recognizing that a court can compel the production of documents during trial); *see also Mon River Towing, Inc. v. Indus. Terminal & Salvage Co.*, 2010 U.S. Dist. LEXIS 31227 at *100 (W.D.PA March 31, 2010) (noting that trial judge compelled the production of the claims file during trial).

CSD respectfully asks this Court for an Order requiring Smart Vent to produce all of the documents relating to the testing of CSD's vent that Smart Vent kept hidden until trial. There is no prejudice in requiring Smart Vent to produce the documents. The documents should have been produced years ago. Conversely, the prejudice to CSD will be monumental and incurable if CSD later discovers that Smart Vent has documents showing a deliberate plan by Smart Vent to hide key evidence in this case because the testing did not go as planned. Based on what was just produced, that certainly appears to be the case. It is unclear why Smart Vent refuses to produce all relevant documents and videos relating to the testing of CSD's vents. It took Smart Vent over a week to produce a select few videos and pictures. CSD should be afforded an opportunity to find out what else Smart Vent is hiding before the jury begins its deliberations.

## IV.   CONCLUSION

WHEREFORE, for the reasons set forth above, CSD prays this Honorable Court to compel Smart Vent to produce all documents relating to any testing Smart Vent or any consultant performed of CSD's vents on or before 5:00 pm on Saturday October 19, 2019. To the extent Smart Vent claims any form of privilege, such a claim would be made in bad-faith as no privilege log was produced identifying consulting experts and because Smart Vent never objected to extensive questioning about Mr. Merrill and Mr. Coulbourne at trial.

-13-

          Respectfully submitted,

          WHITE AND WILLIAMS LLP

BY: /s/ Siobhan K. Cole
      Siobhan K. Cole
      Justin E. Proper (*pro hac vice*)
      Natalie B. Molz
      1650 Market Street | One Liberty Place, Suite 1800 |
      Philadelphia, PA 19103-7395
      Phone: 215.864.7000

      *Attorneys for Defendant,*
      *Crawl Space Door Systems, Inc.*

Dated:  October 18, 2019

## **CERTIFICATE OF SERVICE**

I, Siobhan K. Cole, hereby certify that on this 18th day of October, 2019, I caused the foregoing Motion for Extraordinary and Emergency Relief Compelling the Production of Documents to be served via the CM/ECF System on the following counsel of record:

Anthony J. DiMarino, Esq.
Emmett S. Collazo, Esq.
Kristine Butler, Esq.
A.J. DiMarino, P.C.
52 Haddonfield Berlin Road, Suite 1000
Cherry Hill NJ 08034

**WHITE AND WILLIAMS LLP**

BY: /s/ Siobhan K. Cole
Siobhan K. Cole
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, PA 19103
Phone: 215.864.7000

*Attorneys for Defendant Crawl Space Door Systems Inc., d/b/a Crawl Space Door Systems, Inc.*

23606726v.1