## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____

| | | |
|---|---|---|
| SMART VENT PRODUCTS, INC., | : | |
| | : | CIVIL ACTION NO.: |
| Plaintiff, | : | 1:13-cv-05691-JHR-KMW |
| | : | |
| v. | : | |
| | : | |
| CRAWL SPACE DOOR | : | |
| SYSTEM INC., d/b/a CRAWL | : | |
| SPACE DOOR SYSTEMS, INC. | : | ELECTRONICALLY FILED |
| | : | |
| Defendant. | : | |

_____

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANT'S MOTION FOR SANCTIONS
## UNDER RULE 37(b) OR THE COURT'S INHERENT AUTHORITY (ECF 286), IN OPPOSITION TO DEFENDANT'S MOTION TO CONFORM THE PLEADINGS TO THE EVIDENCE PRESENTED AT TRIAL (ECF 285), AND
## IN SUPPORT OF PLAINTIFF'S CROSS-MOTION TO
## <u>ADMIT EVIDENCE AND FOR A CURATIVE JURY INSTRUCTION</u>

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................... ii

I.   PRELIMINARY STATEMENT ........................................................... 1

II.  RELEVANT BACKGROUND ............................................................. 9

III.   ARGUMENT ....................................................................................... 11

   A. Smart Vent Should Not Be Sanctioned and Its Recently-Located Videos Should Be Admitted Into Evidence at Trial ........................................... 11

     *1. No Prejudice to CSD or Inability of CSD to Cure Prejudice and No Likelihood of Disruption to Trial* ..................................................... 19

     *2. No Bad Faith or Willfulness by Smart Vent* ................................. 22

     *3. Critical Importance of Evidence* .................................................. 23

   B. Smart Vent Has Not Committed a Fraud on the Court .................................. 23

   C. There Has Been No Spoilation of Evidence and No Adverse Inference Against Smart Vent is Warranted; However, a Curative Jury Instruction Based on CSD's False and Inflammatory Comments About Smart Vent Must Be Given. .................................................................................................. 26

   D. CSD's Motion to Amend its Counterclaims to Conform to the Evidence Purportedly Presented at Trial is Procedurally and Substantively Improper, and if Granted Would Unduly Prejudice Smart Vent. ................................................. 28

IV.  CONCLUSION .................................................................................. 31

# TABLE OF AUTHORITIES

**Cases**

*Air Sea Int'l Forwarding, Inc. v. Glob. Imports & Trading, Inc.*, No. 03-cv-268 (PGS), 2008 WL 5070702, at *6-7 (D.N.J. Nov. 21, 2008)................................30

*Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989)............................24

*Bowersfield v. Suzuki Motor Corp.*, 151 F. Supp. 2d 625, 632 (E.D. Pa. 2001) .....12

*Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326 (3d Cir. 1995)...............26

*Briscoe v. Klaus*, 538 F.3d 252, 262 (3d Cir. 2008) .................................................22

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1990)..................................................24

*Ciaverelli v. Stryker Med., a Div. of Stryker Corp.*, 29 Fed. Appx. 832, 833 (3d Cir. 2002) ...............................................................................................................14

*Cooper v. Atl. Cty. Justice Facility*, No. 15-cv-575 (JBS-JS), 2016 WL 155039, at *2 (D.N.J. Jan. 12, 2016) ......................................................................................22

*DeMarines v. KLM Royal Dutch Airlines*, 580 F.2d 1193, 1201-02 (3d Cir. 1978) ........................................................................................................................12

*Douglas v. Owens*, 50 F.3d 1226, 1236 (3d Cir. 1995) ....................................28, 29

*Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir. 1985)...................................12

*Herber v. Johns-Manville Corp.*, 785 F.2d 79, 87 n.8 (3d Cir. 1986)....................22

*Johnson v. Trueblood*, 629 F.2d 287, 294-95 (3d Cir. 1980) ..................................30

*Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904 (3d Cir. 1977) ..................................................................................................................12

*Moon v. Johnson*, No. 17-cv-3759 (NLH), 2019 WL 2611123, at *23 (D.N.J. June 25, 2019) ...........................................................................................................27

*Perna v. Elec. Data Sys., Corp.*, 916 F. Supp. 388, 397 (D.N.J. 1995)............24, 25

*Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984) ..............14

*Quinn v. Consolidated Freight ways Corp. of Del.*, 283 F.3d 572, 576 (3d Cir. 2002) ........................................................................................................ 11, 13

*R.R. Const. Co. of S. Jersey v. JP Rail, Inc.*, No. 08-cv-377, 2012 WL 924824, at *9 (D.N.J. Mar. 19, 2012) ...................................................................................15

*Scarborough v. Eubanks*, 747 F.2d 871, 876 (3d Cir. 1984) ....................................20

*Seltzer v. I.C. Optics, Ltd.*, 339 F. Supp. 2d 601, 607-08 (D.N.J. 2004) ................13

*Sowell v. Butcher & Singer, Inc.*, 926 F.2d 289, 302 (3d Cir. 1991) ......................13

*Thompson v. Harrah's Atl. City Holding, Inc.*, No. 14-cv-2397, 2017 WL 1380426, at *3 (D.N.J. Apr. 17, 2017) ...............................................................................13

*United States v. de Jesus-Concepcion*, 652 F. Appx. 134, 138-39 (3d Cir. 2016)..27

*United States v. Lee*, 634 F. Appx. 862, 864 (3d Cir. 2015) ...................................27

*United States v. Riccardi*, 174 F.2d 883, 890 (3d Cir. 1949) .................................22

**Rules**

Fed. R. Civ. P. 15 ......................................................................................................28

Fed. R. Civ. P. 37 ......................................................................................................11

**Treatises**

Charles A. Wright, et al., 6A *Fed. Prac. & Proc. Civ.* § 1494 (3d ed.) ..................28

## I.    **PRELIMINARY STATEMENT**

Since day three of this trial defendant Crawl Space Door System Inc. ("CSD") has incorrectly suggested to the jury – if not declared outright – that plaintiff Smart Vent Products, Inc. ("Smart Vent") <u>deliberately</u> withheld videos that exculpate CSD from any liability in this case, as if math, physics, and the standards *to which CSD has self-attested*, hold no place in the evaluation and ratings of engineered flood vent products.  This is contrary to the discovery record.

Three videos have been recently located and were produced to CSD, along with photographs also recently located, on Thursday, October 17, 2019.

The videos are consistent with the statements made by Smart Vent at trial – they do <u>not</u> show that a CSD louvered flood vent passes an AC 364 debris test.

Further, Smart Vent produced to CSD documents that reference the videos in May and June, 2015, such as D-155 (Ex. G, produced as SV 20365-74), and D-205 (produced as SV 34740, Ex. D).  The latter begins with a roaring Colorado flood and includes a clip a CSD vent with debris.  Any failure to locate and produce the three recently-produced videos during the high-volume electronic exchange of documents with CSD in May and June 2015 was inadvertent: the three videos were not marked with any of the agreed-upon search terms and, as a result, did not appear in the search results.

1

Regarding search terms for e-discovery, in April of **2015** the parties agreed on an extensive list of search terms to be applied to Smart Vent's e-discovery document production. Almost 37,000 pages were produced by Smart Vent as the result. Files were electronically delivered to CSD's then law firm, Rivkin Radler, LLP, in May and June 2015.

Documents labeled SV 20365-20373, identified by CSD at trial as Exhibit "D-155," and the video that CSD played during the trial (Ex. D, SV 34740, produced at trial as D-205 (ECF 289 at 441) were contained in that May and June of 2015 document production. The video was originally created as part of Smart Vent's explanation to ICC-ES as to why high-speed flooding considerations should not be removed from certain ICC-ES acceptance criteria requirements, an issue which is wholly unrelated to this litigation. The video, which begins with a raging Colorado flood, briefly shows CSD's vents near the end of the two-minute clip.

Despite having more than four years to review the materials contained in Smart Vent's May and June 2015 document production, CSD never raised any issue about the materials produced, and it admittedly did not look for the video contained in that production until the evening of October 8, 2019, after the second day of trial.[1] ECF 297 (Transcript of Proceedings held on 10/17/19) at 1329-32

---

[1]     Based on D-155 and the Colorado flood video alone (D-205, Ex. D), the three videos and photos recently produced by Smart Vent were related to (1) other

(CSD's witness Mr. Penny testifying that <u>after</u> trial testimony by Smart Vent's Mr. Graham, counsel for defendant searched for videos); 1333 (admitting that this was the first time Mr. Penny was asked to look for a video).

During this more than four-year period, there was no phone call or letter, let alone a motion to compel production, for any such videos.

Further, over six months after CSD received Smart Vent's May and June, 2015 production, and after CSD's current counsel, White and Williams, entered its appearance for CSD, CSD conducted the Rule 30(b)(6) depositions of Smart Vent. Michael Graham and Thomas Little were designated by Smart Vent as witnesses.

During those depositions, both occurring on January 29, 2016, CSD did not ask any question about product testing of CSD vents, the video showing a CSD product with debris floating around it, or the information contained in Exhibit D-155, which CSD has repeatedly—and wrongly—argued indicates that Smart Vent purposely concealed evidence. See Ex E, Graham Deposition, Word Index ("test," "tested," and "performed" (there is no "performance")), page references for those words correspond to Smart Vent's own flood vents. Ex. F, Word Index for "testing" (there is no "test") and "performance" in Thomas Little's January 29, 2016 deposition transcript, the words correspond to Smart Vent's own flood vents.

---

discovery provided to CSD by June of 2015; (2) records of which CSD had prior notice; and (3) CSD's own exhibits for use at trial.

During Mr. Graham's deposition, Graham was asked about consulting experts. Counsel for Smart Vent instructed Mr. Graham on the record to not identify a specific non-testifying consulting expert. (DiMarino Decl., Ex. E, Graham Tr., 28:13-30:3). This non-testifying consulting expert was Dr. Thomas Merrill. Fed. R. Civ. P. 26(b)(4)(B) (limiting discovery of "facts known or opinions held by an expert retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial" to "exceptional circumstances.")

Mr. Coulbourne, identified at deposition, consulted for Smart Vent in connection to two issues unrelated to this Smart Vent v. CSD litigation. The two issues were (i) a proposed change to ICC-ES acceptance criteria in the fall of 2013, and (ii) a dispute between ICC-ES and Smart Vent as to how to determine coefficient of discharge for flood vents that are "stacked" into the shape of a square. The former is reflected in documents produced in discovery. The latter is reflected in a full read of the **ten pages** of D-155 not shown to the jury (but produced as SV 20365 – 20374). The subject of the email at D-155, page 1, is "ICC call and preparation for Friday."

The issue between Smart Vent and ICC-ES is made clear when read chronologically, starting from page D-155-10 and reading the emails backward to D-155-1. Put simply, the dispute between Smart Vent and ICC-ES was over what

coefficient was applicable from Table 2-2 for 16" x 16" units (comprised of two 8x16 vents stacked one over the other): 0.4 for a rectangle, or 0.35 for a square? This made a difference to Smart Vent.  *See* D155-9 SV 20373 (email from President of ICC-ES to Mr. Graham of Smart Vent explaining Smart Vent's alarm).

This case has progressed over a six-year period during which time the parties filed and responded to numerous motions in limine, prepared *three* joint final pretrial orders, one as late as May 17, 2019, conducted two separate final pretrial conferences with Judge Williams, participated in two September 2019 logistic hearings, and submitted comprehensive pretrial documents, including trial briefs and proposed jury instructions.

CSD <u>never</u> raised any issue or concern about the information contained in Exhibit D-155 until trial was underway.

On receiving a phone call from counsel for CSD on Saturday, October 12, 2019 at 1:30 p.m. with no advance notice as to the subject of the call, CSD's counsel raised the issue of videos referenced in D-155-1, but seemingly not produced during discovery.  Smart Vent continued prosecuting its case in chief but also used up dozens of hours to review its discovery process, reviewed the search terms discussed with and ultimately ***agreed to by CSD*** in April of 2015, and the presence of any videos that might exist that could include CSD louvered flood

vents.  Three videos and 18 photographs of a CSD louvered flood vent were created in 2013 after Smart Vent received a "Dear Colleague" letter from the ICC-ES that proposed changes to acceptance criteria used for engineered flood vents. Ex. H.  These videos and photos have been produced to CSD and the Court.  Ex. K (photographs); Declaration of B. Shaw; Declaration of T. Little.[2]

Although these videos and photographs were not uncovered by Smart Vent's initial review in April and May of 2015 of the electronic data that the e-discovery vendor obtained from Smart Vent, it was not the result of any intent or anti-competitive conduct by Smart Vent, as CSD has declared without foundation before the jury.  The parties' ***agreed-upon*** e-discovery search terms did not reveal those materials.  Ex. B (showing search terms proposed by Rivkin Radler firm and agreed to by counsel for Smart Vent); Ex. J (letter to counsel for CSD, showing file names).  Further, the videos and photos were also in a separate file on the Smart Vent server that was unrelated to Crawl Space Doors because it pertained to the dispute that Smart Vent had with ICC-ES.  *See* Little Decl., Shaw Decl.; Ex. B (showing search terms); Ex. J (showing file names of the photos and videos).

Smart Vent respectfully seeks leave to show these videos and photographs to the fact-finder to rebut the false accusations by CSD that Smart Vent "buried" or purposely withheld production of evidence reflecting testing of CSD flood vents

---

[2] Smart Vent understands that CSD provided the three videos to the Court. (Ex. L.)

because it showed that CSD's flood vent "passed" such testing.  These items, one of which includes the portion of the Colorado River video clip that CSD played for the jury during trial, do *not* show that CSD's flood vents "passed" any test, and their failure to be included in Smart Vent's e-discovery production was entirely inadvertent.

CSD's counsel also had the chance to ask Messrs. Graham and Little whether Smart Vent tested CSD's flood vents during their respective depositions (depositions noticed and conducted by CSD) but did not do so.  Ex. E, F (showing word indexes for "testing" and "performance," for example).

Based on this record, no sanctions against Smart Vent are warranted, especially not the sanction of dismissal of all Smart Vent's claims with prejudice after six-years of preparing for a jury trial.

CSD should also be precluded from amending its counterclaims to add a New Jersey common-law unfair competition claim.  Smart Vent does not consent to such amendment and no new actual *evidence* was tried by consent, expressly or impliedly, at trial in this regard.  CSD admittedly seeks the amendment for the sole purpose of requesting punitive damages from Smart Vent, based on what it wrongly perceived to be discovery misconduct on Smart Vent's part.  *See* CSD's Motion, ECF 285 at 2 ("CSD files the instant motion seeking to amend its counterclaim to assert a claim for unfair competition under New Jersey's common

law so that the jury may consider whether an award of punitive damages is justified.").

Not only has there been no discovery misconduct by Smart Vent, motions to amend claims to conform to evidence presented at trial are not granted to remedy discovery violations.  Nevertheless, extensive discovery was disclosed in this case *more than four years ago*; thus, despite CSD's current contention that it first became aware that Smart Vent tested CSD flood vents during this trial, there is no reason why CSD did not seek to ascertain this information during the many years of discovery in this case.

If CSD had asked about D-155 or the Colorado River video (D-205 / Ex. D) in 2015, after discovery production, at depositions in January 2016, on a phone call in 2017, 2018, or even September of 2019, at a discovery conference, a pretrial conference, or a trial logistics hearing, this evidence could have been identified for use at trial.

CSD's motion to amend should thus be denied; it is procedurally and substantively improper, untimely, and prejudicial to Smart Vent.

Finally, Smart Vent respectfully requests the opportunity to show the videos to the jury, or have a curative jury instruction concerning CSD's inflammatory comments relating to Exhibit D-155, the videos referenced therein, and CSD's misassumption that Smart Vent purposely "buried" or withheld any evidence in

this case.  These would remedy the substantial prejudice caused by CSD's

statements in this regard.

## II.   **RELEVANT BACKGROUND**

A summary of relevant events is as follows:

| | |
|---|---|
| 2013 | Smart Vent's testing of its vents in connection with ICC-ES acceptance criteria proposed changes (Ex. H). |
| 9/24/13 | Smart Vent commenced this suit by filing a complaint (ECF 1). |
| 8/13/14 | e-discovery vendor arrives at Smart Vent offices in Pitman, NJ to collect data. Ex. A. |
| 3/26/15-4/17/15 | Through multiple discussions and emails among counsel, search terms are finalized.  Ex. B. |
| 5/1/15 | Counsel for Smart Vent receives CSD 1-35694. |
| 5/11/15 | Smart Vent produces SV 1-20009 to the Rivkin Radler law firm. |
| 5/28/15 | Smart Vent produces SV 20010-30230, including exhibit D-155 (SV 20365-20373, Ex. E to DiMarino Decl.) and SV 20647 to the Rivkin Radler law firm. |
| 6/5/15 | Smart Vent produces SV 30231-36958, including SV 34740 (video showing Colorado River flooding and brief clip of CSD vent with debris) to the Rivkin Radler law firm. |
| 6/10/15 | Rivkin Radler law firm confirms receipt of Documents SV 1 through SV 36958 (Ex. C). |
| 7/7/15 | Joint letter to Judge Williams requesting stay of case pending mediation. |
| 7/9/15 | Mediation scheduled with Manny Pokotilow, Esq. |

9

| | |
|---|---|
| 8/28/15 | Rivkin Radler law firm, then counsel for CSD, files Motion to Withdraw (ECF 57). |
| 10/26/15 | Order substituting counsel, White & Williams appears as counsel for CSD (ECF 66). |
| 1/29/16 | Depositions of Michael Graham and Thomas Little. Neither are asked about testing of CSD's louvered flood vent.  During testimony of Mr. Graham about consulting experts, counsel for Smart Vent instructs Mr. Graham on the record and in the presence of Michael Onufrak, Esq., and Siobhan Cole, Esq., counsel for CSD, to not identify a specific non-testifying consulting expert. Ex. E, Graham Tr., 28:13-30:3. |
| 3/4/2016 | Pretrial factual discovery ends (ECF 73). |
| 7/6/2018 | First Joint Final Pretrial Order Submitted to the Court (ECF 145). |
| 7/17/18 | Revised Joint Final Pretrial Order submitted to the Court (ECF 146). |
| 7/18/18 | First Joint Final Pretrial Conference (ECF 147). |
| 5/4/19 | Joint Proposed Final Pretrial Order (Revised) submitted to Judge Williams. |
| 5/17/19 | Joint Final Pretrial Order (Revised 5/3/2019) signed by Judge Williams (ECF 178). |
| 9/9/2019 | Trial Logistics Hearing.   No discovery issues identified by CSD. (ECF 253). |
| 9/25/2019 | Second Trial Logistics Hearing. No discovery issues identified by CSD (ECF 266). |
| 10/7/2019 | Trial Day 1 (ECF 287). |
| 10/10/2019 | Trial Day 3, CSD raises missing video issue before jury (ECF 289). |

### III.   **ARGUMENT**

### A. **Smart Vent Should Not Be Sanctioned and Its Recently-Located Videos and Photographs Should Be Admitted Into Evidence at Trial.**

"If, at the trial, a party wishes to call a witness or introduce a document that he or it did not disclose in discovery, the Court will listen to the arguments to determine whether there is prejudice and a justifiable reason why the party did not disclose the document or witness." *Bhandari v. VHA Sw. Cmty. Health Corp.*, 778 F. Supp. 2d 1155, 1163 (D.N.M. 2011) (denying defendants' motion in limine to preclude plaintiff from calling witnesses or offering documents into evidence that he did not disclose in discovery).

It is well-established that a district court is afforded wide discretion in making rulings on the admissibility of evidence, and whether to impose sanctions under Fed. R. Civ. P. 37(c)(1). *Quinn v. Consolidated Freight ways Corp. of Del.*, 283 F.3d 572, 576 (3d Cir. 2002). Rule 37(c)(1) provides:

> (c) Failure to Disclose; False or Misleading Disclosure; Refusal to Admit.
>
> **(1)** *Failure to Disclose or Supplement.* If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

11

> (**A**) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> (**B**) may inform the jury of the party's failure; and
>
> (**C**) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c)(1).

The United States Court of Appeals for the Third Circuit ("Third Circuit") has set forth four factors for district courts to weigh in deciding whether to exclude evidence under Rule 37(c)(1) as a discovery sanction: (1) prejudice to the party against whom the evidence or witness sought to be precluded is offered; (2) ability of that party to cure the prejudice; (3) likelihood of disruption to trial if such evidence is admitted or such witness is permitted to testify; and (4) bad faith or willfulness involved in not meeting scheduling orders and responding to discovery. *See Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904 (3d Cir. 1977), *overruled on other grounds*, *Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir. 1985), *aff'd*, 482 U.S. 656 (1987); *DeMarines v. KLM Royal Dutch Airlines*, 580 F.2d 1193, 1201-02 (3d Cir. 1978); *see also Quinn*, 283 F.3d at 576-77; *Bowersfield v. Suzuki Motor Corp.*, 151 F. Supp. 2d 625, 632 (E.D. Pa. 2001) (both cases applied *Meyers* factors to a sanction analysis).

An important final consideration is the importance of the evidence or testimony sought to be excluded to the proffering party's case. *Meyers*, 559 F.2d

at 904; *Sowell v. Butcher & Singer, Inc.*, 926 F.2d 289, 302 (3d Cir. 1991) (confirming circuit's "consistent position" that "the importance of the excluded testimony" is a factor).

The exclusion of evidence or expert testimony as a discovery violation sanction is a drastic sanction not favored by the courts. *See*, *e.g.*, *Quinn*, 283 F.3d at 576-79 (applying *Meyers* four-factor test, Third Circuit found district court abused its discretion by excluding testimony of critical witness as a sanction for plaintiff's failure to disclose such testimony in her discovery responses); *DeMarines*, 580 F.2d at 1201-02 (applying *Meyers* four-factor test, Third Circuit court found exclusion of expert evidence on untimeliness grounds constituted reversible error in that case); *Meyers*, 559 F.2d at 904 (trial court abused its discretion in excluding two witnesses offered by plaintiff on ground that they were not listed in plaintiff's pretrial memorandum); *Bowersfield*, 151 F. Supp. 2d at 632 (Third Circuit found labeling exclusion of evidence a "drastic sanction," and permitted expert to opine beyond information contained in expert report); *Thompson v. Harrah's Atl. City Holding, Inc.*, No. 14-cv-2397, 2017 WL 1380426, at *3 (D.N.J. Apr. 17, 2017) (Rodriguez, J.) (confirming application of *Meyers* factors and declining to "impose the extreme sanction of excluding [a defendant's] evidence presented in support of its motion for summary judgment"); *Seltzer v. I.C. Optics, Ltd.*, 339 F. Supp. 2d 601, 607-08 (D.N.J. 2004) (declining request to

exclude portions of plaintiff's affidavits, noting under *Meyers*, exclusion of

"critical evidence" is an "extreme" sanction, "not normally to be imposed absent a

showing of willful deception or flagrant disregard of a court order by the

proponent") (internal quotation marks omitted).

Moreover, the dismissal of an action with prejudice or the entry of default

judgment on issues of liability as a discovery violation sanction, such as  CSD

seeks in its Motion for Sanctions (Doc. 286), is to be reserved for extreme cases—

unlike this case—in which there is no effective alternative to such relief.  *See*

*Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984);[3] *accord*

*Ciaverelli v. Stryker Med., a Div. of Stryker Corp.*, 29 Fed. Appx. 832, 833 (3d Cir.

2002) (reversing district court's dismissal of case as a discovery violation sanction,

opining: "We have made it clear that dismissal with prejudice is an extreme

---

[3]       In *Poulis*, the court utilized a slightly different set of factors as a guide for deciding whether to impose sanctions then the factors utilized in *Meyers*.  The *Poulis* factors are: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.  *See Poulis*, 747 F.2d at 868.  In balancing these factors, a court should resolve "any doubts in favor of adjudication on the merits."  *United States v. $8,221,877.16 in U.S. Currency*, 330 F.3d 141, 162 (3d Cir. 2003).  Regardless of whether the *Meyer* factors or the *Poulis* factors are utilized, the sanctions sought by CSD in its Motion for Sanctions (Doc. 286), filed late October 14, 2019 (Doc. 286), must be denied.

14

sanction for only the most egregious cases."); *$8,221,877.16 in U.S. Currency*, 330

F.3d at 161-62 ("As we have often noted, the sanction of dismissal is disfavored

absent the most egregious circumstances."); and *R.R. Const. Co. of S. Jersey v. JP*

*Rail, Inc.*, No. 08-cv-377, 2012 WL 924824, at *9 (D.N.J. Mar. 19, 2012)

(Rodriguez, J.).

     In *R.R. Const.*, this Court, declining to enter the "drastic" and

"extreme" remedy of default judgment in plaintiff's favor for defendant's

discovery violation, noting that the plaintiff's "allegations of deception [on the part

of defendant], [we]re made too casually and rest largely on Plaintiff's counsel's

speculation and skepticism." *Id.* (citing *Poulis*, 747 F.2d at 868).

     In contrast here, the allegations of fraud,[4] perjury,[5] and deception[6] on the

part of Smart Vent levied by CSD and its counsel, rest *entirely* on assertions

unsupported by the record.

     As the deposition transcripts for Messrs. Graham and Little reveal, CSD's

counsel <u>never</u> asked them whether Smart Vent conducted any testing of CSD's

flood vents. *See* Ex. E, Word Index for the words "tests," "testing," and

"performed" (there is no "performance") in Michael Graham's January 29, 2016

---

[4]    CSD's Motion to Amend the Pleadings, ECF 285 at 11; Motion for
Sanctions, ECF 286 at 1, 16, 23.
[5]    Motion for Sanctions, ECF 286 at 2, 4, 20, 21.
[6]    ECF 285 at 11; ECF 286 at 3.

deposition transcript and compare to the page references for those words which correspond only to questioning about testing of Smart Vent's own flood vents.  *See also* Ex. F, Word Index for the words "testing" (there is no "test") and "performance" in Thomas Little's January 29, 2016 deposition transcript and compare to the page references for those words which correspond only to questioning about testing of Smart Vent's own flood vents.

Moreover, CSD's argument in its Motion for Sanctions (ECF 286) confirms that CSD recognizes that determining the net open area calls for a ***mathematical formula*** (not performance testing):

> CSD and its counsel have at all times been led to believe that there was a genuine issue of fact as to how to measure the net opened area of a flood vent. ***The net opened* [sic] *area is the key variable that, when plugged into a mathematical formula, predicts a flood vent's actual coverage area.***

CSD's Motion for Sanctions (ECF 286 at 3, PageID 5466) (emphasis added).  This is precisely what Mr. Graham testified about in his deposition, as reflected in his deposition transcript at pages 15-18, the deposition pages that CSD argues indicate that Mr. Graham supposedly committed perjury, when he clearly did not.  *See* CSD's Motion at 10, PageID 5473 and DiMarino Decl. Ex. E, Graham Tr. at 15:10-18:8:

BY MR. ONUFRAK:

10 Q. I believe you're referring to Lori Malitsky's

16

11 contention as set forth in her exhibit. Let me ask it
12 this way: You've determined that Crawl Space Doors
13 overstates the net open area of its vents, correct?

[BY MR. GRAHAM:]
14 A. Yes.

15 Q. Tell me everything you know about how your
16 company has done that over the last few years.

17 A. How we have done what?

18 Q. Determined that Crawl Space overstates the net
19 open area?

20 A. There are two elements that make up the
21 enclosed area that a vent can cover, and so let me ask
22 another question, if you don't mind -- am I allowed to
23 ask questions like this so I can clarify? I just want
24 to make sure I --

25 Q. Generally, you should not, but just try to
1 answer the best you can.

2 A. All right. So we'll talk about net open area.

3 MR. DiMARINO: Hold on. Make sure you
4 understand the question that's being asked. If you
5 need clarification, then ask for clarification.

6 THE WITNESS: So if you could clarify
7 are we talking about the net open area of the Crawl
8 Space Door or area of coverage of Crawl Space Door?

9 BY MR. ONUFRAK:

10 Q. We can talk about both.

11 A. Let's start with the net open area. So the net
12 open area is one component that's used to figure out

17

13 what the coverage is of one particular vent, and that's
14 1 square inch per 1 square foot coverage per vent, and
15 back in 1999 or in 2000, when I started this AMCA,
16 method of measuring that net open area was important to
17 us because we also have a net open area on our vent,
18 and that's how much -- that's a key piece that's the
19 open area that water can get through, and so we use
20 that AMCA standard, which is the standard in the
21 industry, to measure net open area.
22 And NFA free area is also another term that's
23 used usually in the ventilation industry. It's also
24 pointed to in the flood vent industry. When we used
25 that method to measure the Crawl Space Door, it was not

1 only not off by just a little bit, it was so far off
2 that we thought we were -- you know, something was
3 wrong. So we found just by using very simple, not
4 even -- and just to clarify -- now, I don't have -- as
5 a tool maker, I am trained to be able to measure things
6 that are the thickness of your hair, very, very
7 accurate, within 1,000s of an inch measurement, and I
8 know how to measure.
9 With a wooden ruler, we could take a wooden
10 ruler to this and realize that something was way, way
11 off, and so the first thing was clear was the
12 measurement of the net free area was incorrect, okay.
13 So that's one element to figure out how many square
14 inches of coverage a vent takes.
15 The other is the coefficient of discharge, and
16 there are references in TB1. There's references in
17 ASCE 24. There are references that go back to 1850
18 that talk about the flow of water and why water flows
19 through a smooth round pipe faster than a square rough
20 element. And so when we looked at the coefficient to
21 discharge of an obstructed opening, and an obstructed
22 opening is very clear, and, again, all those documents
23 that if there's a louver or a grill or grate in front
24 of an opening, it's categorized as obstructed, and
25 unlike a round pipe with nothing in front of it, it

18

1 gives you .6 coefficient of discharge. It is clear to
2 a layman that there are obstructions, and so discharge
3 for that should be a .2 or should be something around a
4 .2, and in the latest information they're using .8, and
5 .8 is a coefficient of discharge, which means that .8.
6 So with a .8 the water flows through this obstructed
7 opening faster than an open -- clear open pipe, and
8 it's not even reasonable that it could be.

There is obviously no perjury by Mr. Graham, who was not being asked

about performance testing, and who appropriately was discussing ***measurements*** in

response to counsel for CSD's questioning on the net open area issue.  Likewise,

Mr. Little was never questioned about testing concerning CSD's flood vents.  *See*

Ex. F.  As such, Smart Vent is not subject to discovery sanctions and did not

participate in any fraud on the Court as CSD disingenuously argues.

### 1. *No Prejudice to CSD or Inability of CSD to Cure Prejudice and No Likelihood of Disruption to Trial*

The Third Circuit has explained what "true prejudice" to an adversary

means:

> If there has been true prejudice to a party by its
> adversary's failure to file a timely or adequate pleading,
> discovery response, or pretrial statement, that factor
> would bear substantial weight in support of a dismissal or
> default judgment.  Examples of such prejudice are the
> <u>irretrievable loss of evidence, the inevitable dimming of
> witnesses' memories, or the excessive and possibly
> irremediable burdens or costs imposed on the opposing
> party</u>.

*Scarborough v. Eubanks*, 747 F.2d 871, 876 (3d Cir. 1984) (emphasis added) (sanction of dismissal of action not warranted for dilatory conduct by counsel).

CSD argues that its trial strategy would have been different if these videos of "testing" were previously produced.

But CSD's claims of prejudice ring hollow as the claims against CSD include the failure to comply with the very standards that it self-attests to in more than fifty (50) "Certification of Engineered Flood Openings" that it has produced over the past many years.  Further, there are no "tests" that justify the inflated net open areas and inflated coefficient of discharge that CSD prays for.  They are certainly not justified in thinking so based on the three videos and the photographs produced last week, yet that illogical step is somehow what CSD represented to the Court.  On October 16, 2019, Defendant's counsel represented that, despite not having seen the three videos, but having seen the Colorado flooding video, if CSD had obtained the then-unseen videos before trial, litigation strategy would have changed.  The Court rightly questioned this.

> MR. PROPER: We would have altered our entire
> litigation strategy. We would not have had experts talking
> about calculations. We would have evaluated the videos, we
> would have addressed the videos, and we would have proceeded
> with the litigation in a completely different direction.
>
> THE COURT: Well, wait a minute. Would the
> calculations change –
>
> MR. PROPER: **They're meaningless.**

20

THE COURT: **No, wait a minute. Would the
calculations and the measurements of the documents of the
flood vent change?**

MR. PROPER: **No. They just wouldn't matter anymore
because the testing is a validation of whether or not the
theory in the calculations is correct. The calculations,
Judge, are just a theory on what experts think the vents will actually
cover. Then you test them, and it determines whether they're theories or
not.** We're not talking about theory anymore. We would have talked about
reality.

(ECF 296 at 109.)

CSD seems to represent that ASCE calculations may be overridden by a test

("They just wouldn't matter anymore").  This attorney argument contradicts CSD's

Certification documents that self-attest to following both TB-1 (2008) (through

November of 2017) and ASCE 24 (2005) (through today), and ASCE 24 (2005)

nowhere states that any "test" allows a manufacturer to ignore net open area,

coefficient of discharge, the resulting calculations, and then promise

overperformance to customers.  And not only does no industry standard, NFIP

Insurance Manual provision, or NFIP Underwriting Bulletin allow a flood vent

manufacturer to dismiss industry standards based on a (wholly imagined)

performance test, but ASCE 24 (2014), applicable in New Jersey and many other

states through the building codes, provides that performance testing is permitted to

"certify" that an engineered opening meets the standards but a flood vent may <u>not</u>

21

be recognized as having a coefficient of discharge above 0.6. Ex. I (ASCE 24-14 at

2.7.2.2 (highlighting added).)

CSD's failure to pursue documents produced to it well over four (4) years

ago must also be considered in this analysis.

And even if Smart Vent did not seek to admit the videos and photographs at

issue in its case in chief, it could introduce and admit them as rebuttal evidence.

*See United States v. Riccardi*, 174 F.2d 883, 890 (3d Cir. 1949) (noting, "The

matter of rebuttal evidence, however, is one committed to the sound discretion of

the trial judge."); and *Herber v. Johns-Manville Corp.*, 785 F.2d 79, 87 n.8 (3d Cir.

1986) (trial court committed no abuse of discretion in admitting picture of an eagle

as "an accurate depiction of what [plaintiff] had seen on bags of asbestos cement at

his place of work" as rebuttal evidence "despite the fact that it was not listed as a

plaintiff's exhibit in the pretrial order").

### 2. *No Bad Faith or Willfulness by Smart Vent*

"Willfulness involves intentional or self-serving behavior."  *Cooper v. Atl.*

*Cty. Justice Facility*, No. 15-cv-575 (JBS-JS), 2016 WL 155039, at *2 (D.N.J. Jan.

12, 2016).  Under the *Poulis* standard of willfulness, "[c]onduct that is 'merely

negligent or inadvertent' is not 'contumacious.'"  *Id.* (quoting *Briscoe v. Klaus*,

538 F.3d 252, 262 (3d Cir. 2008)).  Here, Smart Vent's late disclosure of the

videos was not willful, it was merely inadvertent.

### 3. *Critical Importance of Evidence*

Based on counsel for CSD's arguments to the Court and CSD's Motion for Sanctions, CSD seeks the wholesale exclusion of the videos and photographs at issue, and it has already moved for a dismissal with prejudice of Smart Vent's claims as a discovery violation sanction.  These extreme measures are not warranted.

Plaintiff's discovery productions in May and June of 2015 either referred to CSD videos or included an actual portion of one of the videos.  Ex. C, D, G (showing that by June 10, 2015, CSD had received the Colorado flooding video with a brief clip of a CSD product with debris, as well as references to two CSD videos).  These documents—specifically, email discussions of the existence of videos showing CSD vents in a tank—were clearly relevant to CSD's case and should have been carefully examined by the defense.  In essence, manifest evidence afforded CSD the opportunity to explore this line of discovery, whether for impeachment or affirmative claims.  The Court should therefore conclude that Smart Vent did **not** commit any intentional discovery violation, and that in any event the videos are entirely consistent with SV's arguments that CSD's flood vent products clog with debris.

Culled to its essence, CSD's contention is that the allegedly suppressed evidence would have allowed a different trial strategy, such as the narrative that

23

CSD louvered vents allegedly out-perform ASCE 24 engineering and safety standards. Not only is this inconsistent with CSD *self-attesting* to compliance with ASCE 24, it is also inconsistent with Smart Vent's discovery production and the evidence presented by CSD at trial, which show that the allegedly suppressed evidence is simply cumulative of other materials that were available to CSD in 2015.

### B. Smart Vent Has Not Committed a Fraud on the Court

"Fraud on the court occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." *Perna v. Elec. Data Sys., Corp.*, 916 F. Supp. 388, 397 (D.N.J. 1995) (Rodriguez, J., adopting report and recommendation of Rosen, M.J.) (quoting *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989)). "However, because of their potency, 'inherent powers must be exercised with restraint and discretion.'" *Id.* (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1990)). "Therefore, a primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process ... ***Dismissal therefore is the most severe sanction a court can levy against a party. It is justified under a court's inherent power in extreme***

24

*circumstances*, in response to abusive litigation practices, and to insure the orderly administration of justice and the integrity of the court's order." *Id.* (emphasis added; internal citation omitted; collecting cases).

In the absence of a Third Circuit test, this Court in *Perna*, applied a test utilized by the Ninth Circuit in determining whether a case should be dismissed, namely:

> (1) the existence of certain extraordinary circumstances, (2) the presence of willfulness, bad faith, or fault by the offending party, (3) the efficacy of lesser sanctions, (4) the relationship or nexus between the misconduct drawing the dismissal sanction and the matters in controversy in the case, and finally, as optional considerations where appropriate, (5) the prejudice to the party victim of the misconduct, and (6) the government interests at stake.

*Id.* at 398.[7]

An analysis of these factors indicates that CSD has not demonstrated, and it *cannot* demonstrate, "clearly and convincingly" that Smart Vent "sentiently set in motion some unconscionable scheme calculated to interfere with the judicial

---

[7]   Finding fraud on the court in *Perna* on the following extreme facts: the parties were engaged in a document inspection conducted at the plaintiff's office; during a lunch break, defendant's attorneys left three briefcases containing documents described as "work-product" containing counsel's mental impressions and strategy for the preparation of the case for trial; the plaintiff, surreptitiously, went into the briefcase, and photocopied these documents, turning them over to his counsel; as such, the court held that plaintiff's activities were "deliberate, willful, and intentional acts ... to gain unauthorized access to his adversary's documents." *See* 916 F. Supp. at 403.  No such conduct is even remotely at issue in this case.

25

system's ability impartially to adjudicate" this case because the record indicates

clearly to the contrary. *See id.* at 397.

Accordingly, CSD's request that the Court dismiss Smart Vent's claims in

this case with prejudice for what its wrongly perceives to be a fraud on the court by

Smart Vent (i.e., non-existent perjury by Messrs. Graham and Little) can readily be

denied.  To the extent that any sanctions are warranted against Smart Vent, which

it unequivocally denies, lesser sanctions are certainly available to remedy the

inadvertent late disclosure of the videos and photographs at issue.

### C. There Has Been No Spoliation of Evidence and No Adverse Inference Against Smart Vent is Warranted; However, a Curative Jury Instruction Based on CSD's False and Inflammatory Comments About Smart Vent Must Be Given.

CSD alternatively argues if that the Court does not sanction Smart Vent by

dismissing Smart Vent's claims, "CSD at a minimum should be entitled to an

adverse inference instruction that the videos, if they had been produced, would

have shown that CSD's flood vents performed as advertised."  CSD's Motion for

Sanctions (ECF 286) at 25, PageID 5488, citing *Brewer v. Quaker State Oil*

*Refining Corp.*, 72 F.3d 326 (3d Cir. 1995) as purported for its proposition.

*Brewer* provides:

> For the [adverse inference] rule to apply, it is essential
> that the evidence in question be within the party's
> control…Further, it must appear that there has been an
> actual suppression or withholding of the evidence.  No
> unfavorable inference arises when the circumstances

> indicate that the document or article in question has been
> lost or accidentally destroyed, or where the failure to
> produce it is otherwise properly accounted for.  *See*
> *generally* 31A C.J.S. Evidence § 156(2); 29 Am. Jur. 2d
> *Evidence* § 177 ("Such a presumption or inference arises,
> however, only when the spoliation or destruction [of
> evidence] was intentional, and indicates fraud and a
> desire to suppress the truth, and it does not arise where
> the destruction was a matter of routine with no fraudulent
> intent.").

*Id.* at 334 (refusing to draw an adverse inference from employer's inability to

produce employee's personnel file, where employer's in-house attorney died after

taking possession of file and employer averred that it continued to search for file).

The adverse inference rule does not apply here.  There is no spoliation issue.

The videos and photographs at issue have not been withheld or destroyed.

Further, since CSD has accused Smart Vent of willfully withholding

relevant, allegedly exculpatory (for CSD) evidence, and as this is obviously not

what Smart Vent has done, and as this issue stems in large part from CSD's own

failure to pursue discovery, Smart Vent seeks a curative jury instruction that Smart

Vent has not suppressed any evidence and that CSD's statements and arguments to

that effect during trial were incorrect and shall not be considered by the jury during

its deliberations.  *See United States v. de Jesus-Concepcion*, 652 F. Appx. 134,

138-39 (3d Cir. 2016); *United States v. Lee*, 634 F. Appx. 862, 864 (3d Cir. 2015);

*Moon v. Johnson*, No. 17-cv-3759 (NLH), 2019 WL 2611123, at *23 (D.N.J. June

25, 2019) (cases confirm that courts have discretion to provide curative jury

27

instructions in order to cure errors and avoid mistrials and those decisions are entitled to deference).

**D. CSD's Motion to Amend its Counterclaims to Conform to the Evidence Purportedly Presented at Trial is Procedurally and Substantively Improper, and if Granted Would Unduly Prejudice Smart Vent.**

CSD has moved for leave to amend its counterclaims to "conform" to evidence purportedly presented for the first time at trial and allegedly tried by the *implied* consent of Smart Vent, citing Fed. R. Civ. P. 15(b)(2) ("When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings"); see CSD's Motion (ECF 285) at 8, Page ID 5456 ("Smart Vent implicitly consented to the introduction of evidence supporting CSD's claim for punitive damages under the New Jersey common law for unfair competition.").  This motion can be readily denied for several reasons.

First, Smart Vent does not consent to such amendment and no new *evidence* was tried by Smart Vent's implied consent at trial that would support CSD's motion. *See* Charles A. Wright, et al., 6A *Fed. Prac. & Proc. Civ.* § 1494 (3d ed.) ("[I]f the issue in fact has not been tried with the consent of the parties, then an amendment to conform to the pleadings will not be permitted no matter when made.") (citing *Douglas v. Owens*, 50 F.3d 1226, 1236 (3d Cir. 1995) (citing Wright § 1494; finding an arrestee did not demonstrate that the parties somehow

28

tried his new "employee negligence" claim by express or implied consent). CSD acknowledges that it seeks the amendment at issue for the sole purpose of requesting punitive damages from Smart Vent, based on its incorrect determination of some discovery misconduct on Smart Vent's part.

Second, "an issue has not been tried by implied consent if evidence relevant to the new claim is also relevant to the claim originally pled, because the defendant does not have any notice that the implied claim was being tried." *Douglas*, 50 F.3d at 1236 (collecting cases). As just explained, there is no "new claim" at issue here, but only an attempted procedural maneuver by CSD to preserve a request for punitive damages. In any event, since *CSD* asserts that "the proof is the same" for both its existing Lanham Act claim and its proposed new "claim" (see CSD's Motion, ECF 285, at 10, Page ID 5458), Smart Vent did not have any notice that an implied claim was being tried.

Third, as discussed in detail above, there has been no discovery misconduct by Smart Vent. Regardless of this fact, a Rule 15(b)(2) motion to amend is not the proper vehicle to resolve a discovery dispute.[8] Rule 15(b)(2) motions are granted in limited situations, at the discretion of the trial judge, only where evidence of a new claim has been tried by consent of the parties. *See Johnson v. Trueblood*, 629

---

[8]   CSD filed a Motion for Sanctions under Fed. R. Civ. 37 based on what it mistakenly perceived to be a document production failure by Smart Vent. As such, there was no need for CSD to file a motion under Rule 15(b)(2).

F.2d 287, 294-95 (3d Cir. 1980) (denying Rule 15(b) motion to amend to conform to the evidence where a new claim of negligence would cause "prejudice to the defendants because the allegation of negligence would shift the theory of the trial and force the defendants to prepare a mid-trial defense on a new issue"), cert denied, 450 U.S. 999 (1981).

Finally, taking CSD for its word that it was unaware that Smart Vent tested CSD flood vents until trial commenced, does not support CSD's Rule 15(b)(2) argument. There is no plausible reason why CSD did not seek to ascertain this information during discovery, in particular the documents and video produced by June 10, 2015 (Ex. C) during the depositions of Messrs. Graham and Little. Therefore, granting the pleading relief CSD presently seeks would be unduly prejudicial to Smart Vent. *See*, *e.g.*, *Air Sea Int'l Forwarding, Inc. v. Glob. Imports & Trading, Inc.*, No. 03-cv-268 (PGS), 2008 WL 5070702, at *6-7 (D.N.J. Nov. 21, 2008) (denying plaintiff's Rule 15(b) motion to amend to conform to evidence to add a fraud claim, concluding: "Plaintiff instituted this suit nearly five years ago, and extensive discovery ensued. Although Plaintiff may not have uncovered these allegations of fraud until trial, there is no reason they were not ascertained during discovery. The motion to amend is denied because it is untimely and prejudicial to Defendants.")

30

Accordingly, for any one of these reasons, CSD's Motion to Amend (ECF 285) should be denied.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Smart Vent respectfully requests that the Court:

(1)     deny CSD's Motion for Sanctions Under Rule 37(b) and/or the Court's Inherent Authority (ECF 286);

(2)     deny CSD's Motion to Conform the Pleadings to the Evidence Presented at Trial (ECF 285);

(3)     grant Smart Vent's Cross-Motion to Admit Evidence; and/or

(4)     provide a curative jury instruction that Smart Vent has not improperly suppressed any evidence, including evidence relating to Exhibit D-155, the videos referenced, and that CSD's statements and arguments to that effect during trial were incorrect and shall not be considered by the jury during its deliberations, nor is the jury to draw any negative inference concerning the videos.


Dated:  October 19, 2019                    Respectfully submitted,

s/ Anthony J. DiMarino
Anthony J. DiMarino, Esq.
Emmett S. Collazo, Esq.
Kristine L. Butler, Esq.
**A.J. DiMarino, P.C.**
52 Haddonfield Berlin Road
Suite 1000
Cherry Hill, NJ 08034
(856) 853-0055

31

Counsel for Plaintiff
Smart Vent Products, Inc.