**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| SMART VENT PRODUCTS, INC. | |
| Plaintiff, | **Hon. Joseph H. Rodriguez** |
| v. | Civil No. 13-5691 (JHR/KMW) |
| CRAWL SPACE DOOR SYSTEM INC., d/b/a CRAWL SPACE DOOR SYSTEMS, INC., | **OPINION** |
| Defendant. | |

There are currently five motions pending before the Court in this case. The first is Defendant/Counterclaim Plaintiff Crawl Space Door System Inc.'s Motion for New Trial on Damages. [Docket No. 329.] The second is Crawl Space Doors' Motion for Sanctions. [Docket No. 330.] The third and fourth are Smart Vent's Motions for Judgment as Matter of Law. [Docket Nos. 331, 332.] Finally, the fifth is Smart Vent's Motion for a Permanent Injunction. [Docket No. 333.] For the reasons expressed below, the Court will deny all of the motions.

## I.   Background

As this Opinion is written primarily for the parties, the Court will not restate herein the robust factual background of this case. A thorough description of that background can be found in Smart Vent Products, Inc. v. Crawl Space Door System, Inc., No. 13-5691, 2016 WL 4408818, at *2-4 (D.N.J. Aug. 16, 2016). In the past several years, however, important developments have occurred.

This case was reassigned to this Court in August of 2019. At that time, there were several pending motions in limine and a new trial date was set.[1] During the previous six years of litigation, the Honorable Judge Jerome B. Simandle issued a number of Opinions. Notably, in November 2017, Judge Simandle granted partial summary judgment to Smart Vent as to its claim for unfair competition, finding that Crawl Space Doors disseminated literally false statements regarding TB-1 compliance of their flood vents, and issued a permeant injunction.[2] Central to the present motions is the fact that the case was tried before a jury, as scheduled, over the course of three weeks—beginning on October 7, 2019, and ending October 29, 2019.

The trial was bifurcated with respect to liability and damages. At the liability phase of the trial, the jury found that Crawl Space Doors had made false statements about its products' compliance with industry standards, but that the false statements caused no harm to Smart Vent. The jury found that Smart Vent otherwise failed to prove its allegations of wrongdoing by Crawl Space Doors. With respect to Crawl Space Doors' counterclaims, the jury found that Smart Vent (1) made false statements about the coverage area of Crawl Space Doors' flood vents, which statements harmed Crawl Space

---

[1]  The trial date in this case was rescheduled several times including on May 7, 2019 when the Honorable Judge Jerome B. Simandle moved the trial date from June 10, 2019 to September 9, 2019.  During the course of that summer, Judge Simandle fell ill and suddenly passed away. The case was reassigned to this Court.  Given the age of the case and the impending trial date, the Court gave this case preference on its calendar and moved the trial by one month to October 17, 2019 to permit consideration of the eleven pending in limine motions and other outstanding issues.

[2] This particular Judge Simandle Opinion, dated October 31, 2017 (Filed November 1, 2017), was referenced and discussed on multiple occasions while the Case was on trial. Crawl Space Doors and Smart Vent also discuss Judge Simandle's previous Opinion in their briefing on the present Motions—Crawl Space Doors' discusses a particular comment made about the Opinion by the Court, and Smart Vent takes issue with Crawl Space Doors' comments regarding the previous Opinion made to the jury.

Doors; (2) made false statements about Crawl Space Doors' non-compliance with the Federal Emergency Management Act ("FEMA") and/or the National Flood Insurance Program ("NFIP"), which statements harmed Crawl Space Doors; and (3) made literally false statements that Smart Vent's flood vents are the "only" product certified to meet the requirements of both FEMA and the NFIP.

The jury determined that only Smart Vent was liable, the trial then turned to the damages phase. The jury ultimately awarded $300,000.00 in damages to Crawl Space Doors. This part of the trial is the subject of Crawl Space Doors' Motion for a New Trial on Damages. [Docket No. 329.] Crawl Space Doors now contends that the Court erred in multiple ways during the damages phase and as a result, the jury's award was smaller than it otherwise would have been. In its first Motion, Crawl Space Doors also argues that the Court should award attorneys' fees and costs because this case was "exceptional" as defined by the Lanham Act. [Id. at 21-23; see also Docket No. 286.]

Meanwhile, on the second day of trial, after six years of litigation, during the testimony of one of Smart Vent's witnesses, it came to light that Smart Vent had performed and videotaped physical tests on Crawl Space Doors' flood vents. The videos in question had not been disclosed during discovery. This development is the subject of Crawl Space Doors' Motion for Sanctions, wherein Crawl Space Doors seeks attorneys' fees and costs in addition to default judgment as against Smart Vent's claims.

During the damages phase, part of Crawl Space Doors' argument in support of seeking several million dollars in damages was that Smart Vent's wrongdoing cost Crawl Space Doors a significant portion of the market share over the course of several years. This theory was supported primarily by the testimony of Crawl Space Doors' President and CEO William Sykes. Smart Vent argues now that Crawl Space Doors presented

insufficient evidence to support the jury's award of $300,000. Therefore, in its first Motion for Judgment as a Matter of Law, it seeks a reduction of the jury award.

Smart Vent's second Motion for Judgment as a Matter of Law argues that one of Crawl Space Doors' experts should not have been permitted to testify and that Crawl Space Doors mischaracterized certain evidence and confused the jury on pertinent issues. For these alleged transgressions, Smart Vent seeks judgment as a matter of law or a new trial.

The final pending motion is Smart Vent's Motion for a Permanent Injunction, in which it argues that Crawl Space Doors should be enjoined from making advertising claims about compliance with industry standards. Smart Vent's argument derives from the jury's conclusion that Crawl Space Doors did, in fact, make literally false statements about compliance with industry standards.

The Court will address each motion in turn and will ultimately deny each of them.

## II.   Crawl Space Doors' Motion for a New Trial

As noted above, Crawl Space Doors' first motion seeks a new trial with respect to damages. It also seeks attorneys' fees and costs pursuant to the Lanham Act. The Court will address each aspect of the Motion in turn.

### A. Motion for a New Trial

#### 1. Standard

Rule 59 of the Federal Rules of Civil Procedure permits a court to "grant a new trial on all or some of the issues — and to any party — as allows . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1)(A). "The decision to grant or deny a new trial is almost exclusively within the province of the District Court." John M. Floyd & Assocs. v.

4

Ocean City Home Bank, Civil Action No. 03-1473, 2008 WL 4534079, at *7 (D.N.J. Oct. 2, 2008) (citing Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 36 (1980)). "The traditional bases for granting such a motion are: (1) where the verdict rendered is wholly against the weight of the evidence; (2) where the verdict rendered is excessive; (3) where improper motives have swayed the jury; . . . (4) where gross error has been committed by the jury;" and (5) where the Court provided erroneous jury instructions. Id. (citing Hayes v. Cha, 388 F. Supp. 2d. 470, 496 (D.N.J. 2004); Finch v. Hercules, Inc., 941 F. Supp. 1395, 1413 (D. Del. 1996).

"A new trial may be granted 'when the verdict is contrary to the great weight of the evidence; that is where a miscarriage of justice would result if the verdict were to stand.'" Brown v. Nutrition Mgmt. Servs. Co., 370 F. App'x 267, 269-70 (3d Cir. 2010) (quoting Pryer v. C.O. 3 Slavic, 251 F.3d 448, 453 (3d Cir. 2001)). "In considering a motion for a new trial, in addition to determining whether there was error, a court must determine whether the [moving party] suffered 'substantial prejudice' from the alleged error. Only where there is a reasonable probability that trial error could have had a substantial impact on the jury's decision must a court grant a new trial." U.S. v. Bertoli, 854 F. Supp. 975, 1093 (D.N.J. 1994).

### 2. Analysis

Crawl Space Doors presents three arguments that it believes warrant a new trial.

### i. Inadmissibility of certain evidence

First, Crawl Space Doors claims that "the Court erred in allowing the jury to hear evidence and by instructing the jury to consider comparative harm caused by Crawl Space Doors after the jury determined that Crawl Space Doors' actions did not harm Smart Vent." [Docket No. 329, at 8 (alterations omitted).] Crawl Space Doors points out

that in the liability phase of the trial, the jury found that while Crawl Space Doors in fact made literally false statements regarding compliance with industry standards, it did not cause any actual harm to Smart Vent. [Id. at 3, 8.] Nevertheless, in the damages phase, "the Court allowed both testimony and argument before the jury with regards to harm and/or potential harm caused by Crawl Space Doors' incorrect statements." [Id. at 8.] This, Crawl Space Doors argues, was an error because it allowed the jury "to consider evidence and argument on matters that were already decided." [Id. at 9.] In short, the Court should not have allowed the jury to consider comparative harm when the jury had already decided that Crawl Space Doors' actions did not harm Smart Vent. Crawl Space Doors argues that the only way to correct this error, which was prejudicial, is by awarding a new trial on damages. [Id.]

Smart Vent responds with several arguments of its own that the Court finds compelling. First, Smart Vent argues that its "evidence and arguments in [the damages phase] showed the jury that [Crawl Space Doors'] literally false statements about complying with industry standards . . . had real-world consequences that undermined [Crawl Space Doors'] entitlement to the amount of damages it sought." [Docket No. 340, at 2, 7-17.] Specifically, Crawl Space Doors' "central argument" in the damages phase "was that *but for* Smart Vent's misconduct, it was 'common sense' that [Crawl Space Doors] would have become *the* dominant market player in the industry, with over 60% of the market's flood vent sales." [Id. (emphasis in original).] Smart Vent argues that the evidence in question, which shows that Crawl Space Doors made literally false claims about regulatory standards, would preclude that breadth of damages because Crawl Space Doors did not meet the same standards as Smart Vent did. [Id.] Smart Vent also makes a compelling argument that, even putting aside the evidence in question here,

Crawl Space Doors simply failed to meet its burden in proving damages. [<u>Id.</u> at 7-17.] The jury was presented with several reasons to dispel Crawl Space Doors' theory of how much of the market it would have overtaken but for Smart Vent's actions. [<u>Id.</u>] Crawl Space Doors does not now establish that the alleged admission of evidence about its own behavior was in fact prejudicial, given the rest of the evidence presented to the jury. Therefore, the Court agrees with Smart Vent that Crawl Space Doors' first argument is insufficient to grant a new trial on damages.

Additionally, Smart Vent points out that Crawl Space Doors sought compensatory damages based on harm to Crawl Space Doors' goodwill and reputation. [<u>Id.</u> at 3 & n.1, 17.] The Court agrees with Smart Vent that it was appropriate for the jury to consider Crawl Space Doors' own bad acts in determining the extent to which Crawl Space Doors' goodwill and reputation were damaged. Finally, Smart Vent points out that the jury was the same in both phases of the trial. [<u>Id.</u> at 3-4.] Not only had the jury already heard all of the evidence of Crawl Space Doors' bad acts, it had found that Crawl Space Doors did in fact make literally false statements about regulatory compliance. It follows that Crawl Space Doors cannot now prove that the admission of that evidence in the damages phase was so prejudicial as to cause a "miscarriage of justice."

The Court agrees with Smart Vent's arguments. The evidence and arguments presented during the damages phase do not warrant a new trial on damages. Therefore, the Court will not grant Crawl Space Doors' Motion on that basis.

### ii.    Disgorgement

Next, Crawl Space Doors argues that "the Court erred in preventing the jury from considering disgorgement." [Docket No. 329, at 12 (alterations omitted).] The jury instructions here, stated that

> [t]he jury is not to consider Smart Vent's financial status in its award of monetary damages, nor should the amount of Smart Vent's revenue or profit influence the determination of monetary damages in any way. Damages may not be awarded by the way of disgorging profits that Smart Vent earned, rather only by compensating Crawl Space Doors for injury that Crawl Space Doors sustained or may sustain in the future.

[Id. at 13.]  As Crawl Space Doors concedes, however, "the Lanham Act [does] not give . . . the absolute right to try [a] disgorgement claim to the jury." [Id. at 13.]  In fact, "[u]pon [a plaintiff's] establishing a violation of the Lanham Act, actual harm to its business, and proving the defendant's sales, courts must nevertheless consider whether disgorgement of profits is appropriate." MB Imports, Inc. v. T&M Imports, LLC, No. 10-cv-3445, 2016 WL 8674609, at *6 (D.N.J. Dec. 23, 2016). Nonetheless, Crawl Space Doors contends that "[i]n deciding that Crawl Space Doors would not be allowed to seek disgorgement of Smart Vent's profits, the Court erroneously characterized disgorgement as 'punitive.'" [Docket No. 329, at 12].

In that regard, Crawl Space Doors refers to a single statement made by the Court in addressing the question of damages before it. The Court stated: "we're left in a difficult position as a Court, in view of these circumstances, to say that there was sufficient clear and convincing proof to impose what would appear to be a punitive aspect in determining disgorgement." [Id. (quoting the Transcript); see also Docket No. 325 at 1818:19-1821:9]. Crawl Space Doors, however, overstates the Court's reliance on this language in coming to the equitable decision to preclude disgorgement.

The Lanham Act states a prevailing party "shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover . . . defendant's profits." 15 U.S.C. § 1117(a). The Court, immediately prior to using the word "punitive", explicitly stated that "[d]isgorgement is an equitable issue."

[See Docket No. 340, at 22-23 (quoting transcript).] The Court was clear that, "[w]hen the word "equity" is used, that it's usually a matter for the Court, that I look at this and say, as a matter of equity, we don't have the question asked to the jury." [Docket No. 325 at 1832:1-7]. In its determination, the Court considered the actions of both parties, including most prominently the jury's finding that there were mutual misrepresentations made by both Smart Vent and Crawl Space Doors. [See Docket No. 340, at 22-23 (quoting transcript).] The Court also permitted briefing on the issue, and weighed the parties written submissions, as well as the arguments advanced orally, before concluding that disgorgement was not in the interest of equity, given the facts present in this case.

Crawl Space Doors' argument does little to address this reality, instead focusing in on the Court's one-time use of the word "punitive" on the record. There can be no argument that the Court did not adequately weigh the facts of the case to determine that disgorgement was not in the interest of equity here. This determination was squarely in the province of the Court, so Crawl Space Doors' other arguments that the Court overstepped its bounds are unfounded.[3] See Steak Umm Co., LLC v. Steak "Em Up, Inc.,

---

[3] Crawl Space Doors suggests that "the Court should not have 'substitute[d] its own judgment for that of the jury simply because the court might have come to a different conclusion.'" [Docket No. 329, at 18 (quoting Lightning Lube v. Witco Corp., 802 F. Supp. 1180, 1186 (D.N.J. 1992)]. Crawl Space Doors, however, again mischaracterizes the Court's action. The Court consistently recognized that the jury found that the false statement Crawl Space Doors made about FEMA's Technical Bulletin 1 certification did not cause "actual harm" to Smart Vent. Those findings, by preponderance of the evidence, did not preclude the Court from finding that it could not "ignore the fact that there was joint participation in certain activity up to 2017;" nor that the jury found misrepresentations by Crawl Space Doors. The Court clarified:

> both [parties] were charged with misrepresentation, up to November 1st. So to show damages, there should be more specific direction as to in spite of the fact that both are there misinterpreting how much of the damages can be attributed against the plaintiff and for the defendant. It's an issue that's there, . . . So I can's say that everything prior to November 1st is simon-pure, because there has been

No. CIV.A. 09-2857, 2011 WL 3679155, at *10 (E.D. Pa. Aug. 23, 2011) ("Disgorgement of profits is an equitable remedy that lies within the discretion of the court.")

In this case, the Court fulfilled its duty of determining whether principles of equity militated the availability of disgorgement. It found that disgorgement was not appropriate, and Crawl Space Doors has not presented evidence here upon which the Court will change that determination. The Court will therefore not grant Crawl Space Doors' Motion based on this argument.

### iii.    Cross-examination

Finally, Crawl Space Doors argues that the Court's decision to limit Crawl Space Doors' cross-examination of Dana Trexler, Smart Vent's damages expert, was erroneous. [Docket No. 329, at 21.] Namely, the Court did not permit Crawl Space Doors to cross-examine Trexler with respect to the damage calculations that she had made on Smart Vent's behalf. [Id.] This "precluded the jury from hearing key evidence related to [Crawl Space Doors'] claim for damages," according to Crawl Space Doors. [Id.]

Crawl Space Doors' argument on this issue spans but a single paragraph that plainly does not develop in any significant way how the Court's sustaining of certain objections created a miscarriage of justice or so prejudiced Crawl Space Doors as to warrant a new trial. The Court granted Crawl Space Doors wide latitude in cross-examining Ms. Trexler, which Crawl Space Doors took full advantage of. [See Docket

---

a determination by the Court that in that period of time it was also misrepresentation by the defendant.
[Docket No. 325, Trial Transcript at 1821:15-25]. The Court did not express any "reservations" regarding harm to Smart Vent, rather, the Court expressed that "there is sufficient contradiction up to November 1st as to how <u>influential</u> any of the misrepresentations were." [Id. at 1821:1-9]. In other words, "we don't know, when we try to articulate the amount of damage in this trial, how much of it should have a consideration of the fact that they were both out there doing the same thing." [Id. at 1830:8-11].

No. 340, at 32-37.] There is no basis for granting a new trial due to what appears to be the Court's sustaining of a single objection made during Crawl Space Doors' cross-examination of Ms. Trexler. [Docket No. 326, Trial Transcript, at 1910-11]. Therefore, the Court will not grant Crawl Space Doors' Motion on that basis.

In conclusion, the Court is not persuaded by any of Crawl Space Doors' arguments in favor of its Motion for a New Trial. Therefore, the Court will deny that aspect of the Motion.

### B. Motion for Attorneys' Fees

Crawl Space Doors' Motion for a New Trial also seeks attorneys' fees pursuant to the Lanham Act. The Lanham Act states that a "court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). In the Third Circuit, "a district court may find a case 'exceptional,' and therefore award fees to the prevailing party, when (a) there is an unusual discrepancy in the merits of the positions taken by the parties or (b) the losing party has litigated the case in an 'unreasonable manner.'" Fair Wind Sailing, Inc. v. Dempster, 764 F.3d 303, 314-15 (3d Cir. 2014) (quoting Octane Fitness, LLC v. Icon Health & Fitness, Inc., 572 U.S. 545 (2014)).

Here, Crawl Space Doors points out that the jury ruled against Smart Vent and that Smart Vent failed to disclose that it had tested Crawl Space Doors' vents, which tests allegedly showed that Smart Vent's claims were "baseless." [Docket No. 329, at 22-23.] This, Crawl Space Doors argues, shows both that there was an "unusual discrepancy" in this case and that Smart Vent litigated the case in an "unreasonable manner." [See id.] The allegations made with respect to this aspect of Crawl Space Doors' Motion are discussed in more detail below, as they are also raised in its Motion for Sanctions. But in considering the totality of the circumstances here, see Octane

11

Fitness, 572 U.S. at 554, the "exceptional case" threshold is not met. The characterization of Smart Vent's case as "baseless," particularly when the jury did in fact rule in its favor on one liability issue, is itself unsubstantiated. As will be discussed further below, the nondisclosure of certain documents is not illustrative of an "unreasonable" approach to the litigation by Smart Vent either, despite Crawl Space Doors' protestations. The Court cannot reasonably hold that this is an exceptional case under the Third Circuit's interpretation of the Lanham Act. Therefore, the Court will deny this aspect of Crawl Space Doors' Motion, as well.

## III.   **Crawl Space Doors' Motion for Sanctions**

Crawl Space Doors' second motion seeks sanctions for Smart Vent's alleged discovery violations revolving around the video of Smart Vent testing a Crawl Space Doors vent. [Docket No. 330.] Crawl Space Doors claims that Smart Vent intentionally hid the video and other related documents throughout the course of litigation. [See id. at 2-5.] It also claims that one of Smart Vent's witnesses, Michael Graham, gave false deposition testimony and another, Thomas Little, gave false trial testimony. [Id. at 5-13.] Crawl Space Doors alleges that Smart Vent "buried" the relevant documents and evidence, even though such evidence was "the best evidence of whether Crawl Space Doors misrepresented the coverage area of its flood vents." [Id. at 13-17 (alterations omitted).] Crawl Space Doors now seeks sanctions in the form of attorney's fees and costs and the dismissal of Smart Vent's complaint.

### A.  Standard

Under Federal Rule of Civil Procedure 26(a), except under certain circumstances not present here,

12

a party must, without awaiting a discovery request, provide to the other parties:

(i)  the name and, if known, the address and telephone number of each individual likely to have discoverable information — along with the subjects of that information — that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

(ii) a copy — or a description by category and location — of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment.

FED. R. CIV. P. 26(a)(1)(A)(i)-(ii). Additionally,

[a] party who has made a disclosure under Rule 26(a) — or who has responded to an interrogatory, request for production, or request for admission — must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect.

FED. R. CIV. P. 26(e)(1)(A).

Rule 37 addresses the ramifications of a party failing to satisfy Rule 26's

requirements:

If a party fails to provide information or identify a witness as required by Rule 26(a) or (3), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

FED. R. CIV. P. 37(c)(1). Alternatively, the court "may order payment of the reasonable

expenses, including attorney's fees, caused by the failure; . . . may inform the jury of the

party's failure; and . . . may impose other appropriate sanctions." Id. In determining

whether to impose sanctions pursuant to Rule 37(c)(1), courts will consider: "(1)

prejudice or surprise to the [opposing party]; (2) the ability of [the opposing party] to

cure the prejudice; (3) the likelihood of disruption; and (4) the [non-disclosing party's]

bad faith or unwillingness to comply." Wachtel v. Health Net, Inc., 239 F.R.D. 81, 104-

05 (D.N.J. 2006) (citing <u>Newman v. GHS Osteopathic, Inc.</u>, 60 F.3d 153, 156 (3d Cir. 1995)).

Moreover, a court has the inherent power to determine whether a fraud has been committed upon the court. This requires a party to prove "clearly and convincingly" that the opposing party "has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." <u>Perna v. Elec. Data Sys. Corp.</u>, 916 F. Supp. 388, 397 (D.N.J. 1995) (quoting <u>Aoude v. Mobil Oil Corp.</u>, 892 F.2d 1115, 1118 (1st Cir. 1989)). In deciding to enforce its inherent powers, a district court should consider the same factors as it uses in applying Rule 37. <u>See</u> <u>Republic of the Philippines v. Westinghouse Elec. Corp.</u>, 43 F.3d 65, 74 (3d Cir. 1994). The following factors must be considered prior to the court dismissing a case as a sanction for misconduct:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

<u>Poulis v. State Farm Fire & Casualty Co.</u>, 747 F.2d 863, 868 (3d Cir. 1984).

## B. Analysis

As noted above, Crawl Space Doors argues that three alleged violations warrant the desired sanctions: the intentional "burying" of the video and related documents, the false deposition testimony of Michael Graham, and the false trial testimony of Thomas Little. The Court will first consider the Rule 37 factors outlined above. To the extent that Crawl Space Doors was prejudiced by these issues, the Court finds that, by the Court's

14

actions and by Crawl Space Doors' opportunities to confront the issues on cross-examination at trial, the prejudice was substantially mitigated. The Court precluded any use of the video at trial, at the request of Crawl Space Doors, [4] and instructed the jury not to consider any evidence presented about the video. [Docket No. 305, Trial Transcript, October 21, 2019, at 1429:11-1430:15.] This was done precisely "in order that there be no prejudice to either side." [Id.] The Court finds that, given the unique circumstances surrounding this case and this issue in particular, this approach was adequate to alleviate any prejudice as to either party.

Additionally, the Court rejects the assertion that these issues were the result of Smart Vent's willful or bad faith conduct. Voluminous discovery was exchanged in this case, which included portions of the videos in question and documents making reference to those videos. [See Docket No. 339, at 6-14.] Moreover, after extensive back-and-forth between the parties' attorneys, several search terms were agreed upon for electronically stored information; unfortunately, the videos were not marked with any of those terms, and therefore did not show up in Smart Vent's searches. [See id. at 24-25.] While it is regrettable that the videos were not produced until after the trial began, Crawl Space Doors has not provided sufficient evidence for the Court to make a finding that Smart Vent intentionally "buried" the relevant documents and evidence in this case. The Court will find, therefore, that Smart Vent's actions were not in bad faith.

---

[4] During the litigation phase of the trial, Smart Vent moved to admit the video at issue, as well as photographs to the jury, claiming that the video was "consistent with the statements made by Smart Vent at trial," meaning that they "do not show that a CSD louvered flood vent passes an AC 364 debris test." [Docket No. 300-1, at 5.] Crawl Space Doors opposed and asked the Court to "preclude Smart Vent from offering any further testimony or evidence about the performance testing of Crawl Space Doors' flood vents." [Docket No. 301, at 6-7.] The Court determined "that the video will not be used, will not be admitted in evidence, and this is in keeping with the request of the defendant." [Docket No. 305, Trial Transcript, October 21, 2019, at 1429:11-1430:15.]

Therefore, the Court will hold that, under Rule 37, sanctions in the form of attorney's fees and costs are not appropriate in this instance. It follows that default judgment — a decidedly more extreme sanction — is also inappropriate here. With respect to the <u>Poulis</u> factors, the Court finds that each of them, too, cut against imposing default judgment. Several of the <u>Poulis</u> factors follow the same discussion as above: Smart Vent's personal responsibility is negligible here, as the non-disclosure was unintentional; any prejudice that resulted was already addressed by the Court; and Smart Vent did not act willfully or in bad faith. As to the remaining factors, there is no evidence of Smart Vent's history of dilatoriness; to the contrary, once Smart Vent learned of the non-disclosure of the video, it turned it over promptly. The Court has already determined that other sanctions are not necessary, meaning that the fifth <u>Poulis</u> factor cuts against default judgment. And finally, the sixth factor — the meritoriousness of Smart Vent's claim or defense — is not extremely relevant here given that the jury has already heard the case and decided the merits of those claims and defenses.

In sum, the various factors regarding the imposition of sanctions indicate that sanctions are not appropriate in this case. The Court will therefore deny Crawl Space Doors' Motion for Sanctions.

## IV.   **Smart Vent's First Motion for Judgment as a Matter of Law**

### A. **Standard**

Smart Vent's first Motion for Judgment as a Matter of Law seeks a reduction of the damages award to either nothing or a nominal amount. [Docket No. 331, at 3.] Judgment as a matter of law is appropriate "only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could

find" in the nonmovant's favor. <u>Moyer v. United Dominion Indus., Inc.</u>, 473 F.3d 532, 545 n.8 (3d Cir. 2007) (quoting <u>Lightning Lube, Inc. v. Witco Corp.</u>, 4 F.3d 1153, 1166 (3d Cir. 1993)). "The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party." <u>Erhart v. City of Atlantic City</u>, No. 00-cv-6209, 2005 WL 8174791, at *2 (D.N.J. Feb. 10, 2005) (quoting <u>Walter v. Holiday Inns, Inc.</u>, 985 F.2d 1232, 1238 (3d Cir. 1998)).

Remittitur — the reduction of a jury award in a civil case — "is well established as a device employed when the trial judge finds that a decision of the jury is clearly unsupported and/or excessive." <u>Cortez v. Trans Union, LLC</u>, 617 F.3d 688, 715 (3d Cir. 2010) (quoting <u>Spence v. Bd. of Educ. of Christina Sch. Dist.</u>, 806 F.2d 1198, 1201 (3d Cir. 1986)). A court's conclusion that it would have awarded a smaller amount of damages is an insufficient basis to grant remittitur. <u>See</u> <u>Motter v. Everest & Jennings, Inc.</u>, 883 F.2d 1223, 1230 (3d Cir. 1989). Rather, "the damages assessed by the jury must be so unreasonable as to offend the conscience of the Court." <u>Id.</u> (quoting <u>Murray v. Fairbanks Morse</u>, 610 F.2d 149, 152 (3d Cir. 1979)). Finally, "a court cannot reduce an award without affording the [party whose award is being reduced] the option of a new trial." <u>Cortez</u>, 617 F.3d at 717.

**B. Analysis**

"[V]iewing the evidence in the light most favorable to" Crawl Space Doors, the nonmoving party here, "and giving it the advantage of every fair and reasonable inference," the Court will hold that there was sufficient evidence to support the jury's award of $300,000 in damages to Crawl Space Doors. The jury calculated that sum of damages as the amount of lost sales and/or loss of reputation or goodwill due to Smart

Vent's false advertising about the coverage area of Crawl Space Doors' flood vents and their compliance with FEMA and/or the NFIP.

Crawl Space Doors argued during the damages phase that Smart Vent's false advertising resulted in Crawl Space Doors having a smaller market share, and therefore fewer profits, than it otherwise would have had. Crawl Space Doors relied on the testimony of William Sykes — its President, co-owner, and designated Rule 30(b)(6) witness — to support this theory.  Smart Vent characterizes his testimony as "speculative, inaccurate, and unreliable." [Id. at 15 (alterations omitted).] Mr. Sykes based his analysis merely on his "common sense" conclusion that false advertising that paints one's products in a negative light will negatively affect that individual's sales. [See id. at 16.] Smart Vent argues that the "market share" theory is belied by the fact that Crawl Space Doors' sales have steadily increased since June 2015, apparently in spite of Smart Vent's false advertising. [Id. at 18.] Furthermore, Smart Vent argues that Mr. Sykes' calculations were inflated by the fact that he did not consider the extent to which Crawl Space Doors' own false advertising — in which it claimed that its vents were TB-1 compliant when they were not — might have affected its sales. [Id. at 19-21.] Mr. Sykes' calculations were also erroneous, according to Smart Vent, because he included products that Crawl Space Doors did not even sell in his analysis of the proportion of Smart Vent sales that would have gone to Crawl Space Doors but for the false advertising. [See id. at 21.] Finally, and broadly, Mr. Sykes' analysis did not consider external forces, new competitors, and other relevant factors. [Id. at 22-24.]

Smart Vent also contends that Crawl Space Doors did not suffer any reputational harm or loss of goodwill, pointing to the fact that Mr. Sykes' testimony only included the words "goodwill" or "reputation" once. [Id. at 24-25.] Furthermore, Smart Vent points

to the testimony of its own damages expert, Dana Trexler, which Smart Vent claims was unrebutted and called into question various aspects of Mr. Sykes' analysis. [Id. at 25-27.] Ms. Trexler alluded to many of the same issues listed above in her testimony, ultimately concluding that Crawl Space Doors' damages were $0. [Id. at 27.]

Crawl Space Doors rebuts that, even if the jury completely discredited Mr. Sykes' market loss theory, there was still "sufficient evidence . . . to justify an award of $300,000 in compensatory damages" due to loss of goodwill and reputational harm. [See Docket No. 336, at 7.] Smart Vent's argument that Mr. Sykes' testimony did not include the words "goodwill" or "reputation" is irrelevant, especially when the Court considers the evidence that was presented. Although not couched precisely in those terms, Crawl Space Doors did present evidence to show that how Smart Vent's false statements negatively affected Crawl Space Doors. [See Docket No. 336, at 8-9.] This included evidence of Smart Vent's employees misinforming consumers directly about the performance of Crawl Space Doors' vents, even after Judge Simandle clarified the issue in an earlier decision. [Id.]

Crawl Space Doors sought several million dollars in damages due to lost profits and/or loss of goodwill and reputational harm. [Id. at 1-2.] The jury returned an award of only $300,000. Viewing the evidence in the light most favorable to Crawl Space Doors, it is reasonable that the jury carefully considered the evidence, rejected various portions of it, perhaps including Mr. Sykes' "market share" theory, and yet gave credence to enough of it to warrant the award. The Court is not in a position to know precisely what swayed the jury and what did not; however, given the evidence presented and the standard that applies to a motion for judgment as a matter of law, the Court will hold that there was sufficient evidence for the jury to reach its conclusion in the

damages phase of trial. Furthermore, the Court does not find that the award "offend[s] the conscience" so as to warrant remittitur. Therefore, Smart Vent's Motion will be denied in its entirety.

**V.    Smart Vent's Second Motion for Judgment as a Matter of Law**

In this Motion, Smart Vent seeks both judgment as a matter of law and a new trial, for distinct reasons. The Court will analyze each argument separately.

### A.  Motion for Judgment as a Matter of Law

Smart Vent's second Motion for Judgment as a Matter of Law argues that Crawl Space Doors' expert Dr. James Rice should have been precluded from testifying. [Docket No. 332.] It also argues that a new trial should be granted under Rule 59 because of what Smart Vent characterizes as Crawl Space Doors' misleading presentation of certain pieces of evidence.

At the outset, the second Motion for Judgment as a Matter of Law is procedurally barred because Smart Vent failed to bring a Rule 50(a) motion at the close of evidence during the liability phase of the trial, which is the phase during which Dr. Rice testified. The Third Circuit has adopted a strict rule on this issue: "The failure of [a party] to move for a directed verdict against [its opposition] at the close of all the evidence foreclose[s] . . . its right to move for judgment notwithstanding the verdict." Gebhardt v. Wilson Freight Forwarding Co., 348 F.2d 129, 132 (3d Cir. 1965). As the Circuit later explained, "Gebhardt totally forecloses any consideration of sufficiency questions in the absence of a proper motion for directed verdict." Yohannon v. Keene Corp., 924 F.2d 1255, 1262 (3d Cir. 1991). Nevertheless, this Court will consider the merits of the Motion.

Smart Vent argues that Dr. Rice should not have been qualified to testify as an expert because he did not employ adequate methodologies in reaching his conclusions.

[See Docket No. 332, at 9-19.] Namely, Smart Vent contends that Dr. Rice's application of industry standards — namely FEMA's Technical Bulletin 1 ("TB-1"), the American Society of Civil Engineers standard 24 ("ASCE 24"), and Air Movement and Control Association ("AMCA") standards — was inconsistent at best and completely lacking at worst. [Id.] Crawl Space Doors argues that, in fact, neither FEMA nor ASCE have "prescribed the method by which the net open area of a flood vent can, should, or must be measured." [Docket No. 337, at 5.]

At their core, Smart Vent's issues with Dr. Rice's opinion were primarily ones that were best addressed on cross-examination and by the testimony of Smart Vent's own experts. As Crawl Space Doors now argues, the majority of the issues presently raised by Smart Vent — many of which were also raised in an earlier Daubert motion that the Court denied — are better characterized as differences of opinion and interpretation than as examples of Dr. Rice's lack of proper methodology in coming to his conclusions. Smart Vent's best argument revolves around Dr. Rice's apparent misinterpretation of certain TB-1 guidelines — namely the definition of obstructions and of "R." [See Docket No. 332, at 14-18.] However, the Court will hold that these discrepancies are insufficient to render Dr. Rice's opinion unreliable on the whole.

As a result, the Court will hold that Smart Vent has not met the standard for judgment as a matter of law: that is, that "there is insufficient evidence from which a jury reasonably could find" in the nonmovant's favor. Moyer, 473 F.3d at 545 n.8 (quoting Lightning Lube, 4 F.3d at 1166). Here, in addition to Dr. Rice's testimony, there was substantial evidence to support the jury's verdict, including fact witnesses, engineers, Smart Vent's own experts, and other evidence. [See Docket No. 337, at 7-8.] Therefore, for the various reasons listed above, Smart Vent has not met its burden with

respect to the second Motion for Judgment as a Matter of Law, and the Court will deny it.

### B.  Motion for a New Trial

Next, Smart Vent argues that it is entitled to a new trial with respect to liability. As noted above, "[a] new trial may be granted 'when the verdict is contrary to the great weight of the evidence; that is where a miscarriage of justice would result if the verdict were to stand.'" Brown v. Nutrition Mgmt. Servs. Co., 370 F. App'x 267, 269-70 (3d Cir. 2010) (quoting Pryer v. C.O. 3 Slavic, 251 F.3d 448, 453 (3d Cir. 2001)). "In considering a motion for a new trial, in addition to determining whether there was error, a court must determine whether the [moving party] suffered 'substantial prejudice' from the alleged error. Only where there is a reasonable probability that trial error could have had a substantial impact on the jury's decision must a court grant a new trial." U.S. v. Bertoli, 854 F. Supp. 975, 1093 (D.N.J. 1994).

Smart Vent believes it is entitled to a new trial for two reasons. First, Smart Vent argues that Crawl Space Doors improperly suggested to the jury that Smart Vent engaged in discovery violations with respect to the video discussed above. [See Docket No. 332, at 24-27.] Second, Smart Vent argues that Crawl Space Doors improperly presented legal arguments to the jury about Judge Simandle's previous Opinion. [See id. at 28-35.]

In short, neither of these arguments, even if true, resulted in "substantial prejudice" against Smart Vent, and therefore will not be the basis for a new trial. Smart Vent argues that the jury was affected by these issues based on "the single question from the jury during deliberations," which asked whether liability issues were "only based on the situation after Judge Simandle's ruling." [Id. at 35-36.] Smart Vent argues that the

way in which Crawl Space Doors made these arguments "suggested to the jury that Smart Vent had no respect for the Court or its processes." [Id. at 37.]

The Court disagrees with these conclusions. As Smart Vent's own recounting of the trial illustrate quite clearly, the Court intervened on numerous occasions to limit the scope of Crawl Space Doors' questioning of witnesses. Specifically, the discussions of Judge Simandle's Opinion were repeatedly reined in by the Court. [See id. at 28-35.] Additionally, the Court gave a curative instruction with respect to the video. [See Docket No. 337, at 12.] In other words, the Court took necessary steps to ensure that the jury's decision was not affected by improper arguments, such as those now complained of by Smart Vent. Based on how the Court handled these issues at trial, and based on the lack of any real argument that these issues created "substantial prejudice" against Smart Vent, the Court will deny Smart Vent's Motion for a New Trial.

## VI.   Smart Vent's Motion for a Permanent Injunction

The final motion to be decided is Smart Vent's Motion for a Permanent Injunction. [Docket No. 333.] Smart Vent argues that, because the jury found that Crawl Space Doors made literally false statements with respect to Crawl Space Doors' vent's compliance with industry standards, Crawl Space Doors should now be "enjoin[ed] . . . from marketing, advertising and/or certifying its mass-produced louvered flood vents as compliant with industry standards," namely TB-1, ASCE 24-05, ASCE 24-14, the IRC, the IBC, and the Lowest Floor Guide. [Id. at 2-3.]

"In deciding whether a permanent injunction should be issued, the court must [first] determine if the plaintiff has actually succeeded on the merits (i.e. met its burden of proof)." Ciba-Geigy Corp. v. Bolar Pharmaceutical Co., Inc., 747 F.2d 844, 850 (3d Cir. 1984). The prevailing party must also demonstrate

> (1) that it has suffered an irreparable injury; (2) that the remedies available at law, such as monetary damages, prove inadequate to compensate for that injury; (3) that the balance of hardships between the plaintiff and defendant favor equitable relief; and (4) that the public interest would not be disserved by a permanent injunction.

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

The principal issue with Smart Vent's Motion is that the jury merely found that that Crawl Space Doors made literally false statements regarding compliance with industry standards. It did not indicate, because it was not asked to indicate, precisely which industry standards Crawl Space Doors made literally false statements about. Therefore, as Crawl Space Doors argues in its response to this Motion, "Smart Vent cannot credibly argue that it succeeded on the merits of a claim that Crawl Space Doors made literally false statements regarding its compliance with any or all of" the industry standards Smart Vent now invokes. Without such specificity, it would be inappropriate for the Court to grant Smart Vent's Motion.

The jury's findings cut against all four of the eBay factors, too, and the Court is "prohibited from reconsidering any issues necessarily and actually decided by the jury." EEOC v. Century Broad. Corp., 957 F.2d 1446, 1463 (7th Cir. 1992); see also Squires v. Bonser, 54 F.3d 168, 174 (3d Cir. 1995) (citing Century Broad. Corp., 957 F.2d at 1463)). Smart Vent cannot show irreparable harm because the jury already decided that Smart Vent was not, in fact, harmed by the false statements. Because Smart Vent was not harmed, it received no remedy. It strains reason to argue that this is inadequate when the jury ruled the way it did. Enjoining Crawl Space Doors from engaging in any advertising that references industry standard compliance, when it has not been determined that such advertisements would in fact be false, would be an immense and

24

unsubstantiated burden on Crawl Space Doors. Conversely, the only burden Smart Vent claims is the potential for future lost sales — despite the fact, it bears repeating, that the jury already found that Smart Vent was not damaged by the same alleged activities in the past. Thus, the balance of hardships does not favor an injunction. Finally, Smart Vent argues that an injunction would be in the public interest because it would "stop the fraud perpetrated on consumers who are led to believe by [Crawl Space Doors] that its louvered flood vents are compliant with industry standards, including ASCE 24-05, ASCE 24-14, the IRC, the IBC, and the Lowest Floor Guide, when they are not." [Docket No. 333, at 10.] Once again, this argument is undermined by the fact that there has been no explicit finding that Crawl Space Doors has defrauded consumers in this respect.

Smart Vent's arguments in favor of a permanent injunction are unavailing in light of the ruling that the jury made during the liability phase of this trial. Therefore, the Court will deny Smart Vent's Motion for a Permanent Injunction.

## VII.   <u>Conclusion</u>

For the reasons expressed above, the Court will deny all of the motions currently pending before it. An accompanying Order shall issue.

Dated: September 24, 2020

___/s/ Joseph H. Rodriguez_____
JOSEPH H. RODRIGUEZ
United States District Judge
